**Dale R. KICHLINE, Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION,**
Appellee.

No. 85–1733.

United States Court of Appeals,
Third Circuit.

Argued July 22, 1986.

Decided Sept. 11, 1986.

Barbara J. Rudquist (argued), DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, Minn., Frederick N. Dorfman, Farage & McBride, Philadelphia, Pa., for appellant.

Jonathan F. Altman, (argued), Consolidated Rail Corp., Philadelphia, Pa., for appellee.

Before GIBBONS, WEIS, and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this FELA case, plaintiff filed suit more than three years after learning that his pulmonary disease had been aggravated by exposure to diesel fumes in the work place. He continued to work even though he was aware of the harmful effect of the fumes. He alleges that the cause of action did not accrue until his retirement when exposure to the harmful substance ceased. The district court concluded the suit was time barred and granted summary judgment for defendant. 630 F.Supp. 50. We will affirm the district court's ruling on the primary claim, but will remand for further proceedings on the separate cause of action for any aggravation of injury which occurred within the three years preceding the filing of the action.

From October 1946 to November 1982, plaintiff was employed by defendant or its predecessors. He began as a carpenter but for about twenty years, beginning in 1955, he was a diesel mechanic and performed most of his duties outdoors. In 1975, he was transferred to the Bethlehem Engine Terminal, where for seven years he worked inside the diesel shop as an engine inspector.

Plaintiff inspected the locomotives in a maintenance shop that was approximately ninety feet wide and thirty feet high. To complete the tests, it was necessary to have the diesel engine running a substantial part of the time. Plaintiff testified in his deposition that because the ventilation was inadequate, the fumes in the building would become very heavy at times making it difficult to breathe and see. He also stated that in 1976 or 1977 he had complained to his foreman about the heavy concentration of fumes.

In 1978, because he was suffering shortness of breath, plaintiff consulted Dr. Mark I. Koshar. The doctor testified that in addition to cervical arthritis and hypertension, he diagnosed the plaintiff's condition as chronic obstructive pulmonary disease caused by thirty-five years of smoking cigarettes and aggravated by exposure to diesel fumes.

The doctor was aware from the beginning that plaintiff was a diesel mechanic, and consequently advised him that he would be well-served by avoiding pollutants, fumes, and other chemical exposures. A note in the doctor's record of May 22, 1980 gave the results of pulmonary function studies and stated that a nurse had told plaintiff to avoid pollutants.

Plaintiff consulted a pulmonary specialist in August 1978, who wrote to Dr. Koshar and confirmed his diagnosis of chronic obstructive pulmonary disease. Plaintiff testified that Dr. Kenneth Wildrick Associates, the pulmonary specialists, "gave [him] a verbal warning that diesel fumes certainly was detrimental to [his] health." He estimated that he received this warning in 1979, but the letter from the specialist to Dr. Koshar established that the consultation occurred in August 1978.

Although plaintiff believed his doctors' admonition took place in 1979, he conceded that he was told to stay away from diesel fumes, but nevertheless continued to work until November 1982. He brought this action under the Federal Employers' Liability Act on August 3, 1983.

Defendant moved for summary judgment alleging the suit was barred by the Act's three-year statute of limitations. Based on the depositions, the district court concluded that there was no dispute about the critical facts: the plaintiff's condition had been diagnosed in 1978 and he had been told to avoid diesel fumes in either 1978 or 1979. Hence, because plaintiff knew both of his injury and its causal connection no later than 1979, the district court decided the suit filed in 1983 was beyond the applicable three-year limitation.

The district court also stated that there was no evidence to show that after learning of his condition plaintiff informed his supervisor that his illness was caused or aggravated by the working environment. Nor did plaintiff request reassignment to a different position or special equipment to reduce his exposure to pollutants.

■ On appeal, plaintiff contends that summary judgment was inappropriate because an issue of material fact exists—when his doctors told him of the danger of diesel fumes. He asserts the doctors were unable to pinpoint the specific occasion when they advised him to avoid pollutants. Plaintiff further contends the limitation period did not begin to run until November 1982, when he ceased work for defendant.

We find no merit in the plaintiff's contention that crucial facts are in dispute. Although plaintiff is uncertain whether the warnings by his physicians took place in 1978 or 1979, that fact is not material because in either event the suit was filed beyond the statute of limitations. Moreover, plaintiff does not question the accuracy of the letter from Dr. Wildrick's office which definitely establishes that consultation with the pulmonary specialist took place in August 1978. On the strength of the evidence presented, a jury finding that the warnings and diagnosis took place after 1979 could not be upheld. *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Consequently, we proceed on the basis that plaintiff knew of the aggravation of his lung condition and the possible cause of his injury—inhalation of diesel fumes at the shop—no later than 1979.

The statute of limitations for suits under the Federal Employers Liability Act, 45 U.S.C. § 56, provides that "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

When an employee is injured in a traumatic incident, determination of the beginning of the limitations period generally presents little difficulty. When the injury, however, is an occupational disease that has an indefinite beginning and progresses insidiously over many years, the statute of limitations, particularly the statutory accrual factor, becomes more difficult to measure.

The Supreme Court recognized that the Congressional purpose in enacting FELA would be frustrated if a plaintiff were chargeable with knowledge of the slow progress of a disease, "at some past moment in time, unknown and inherently unknowable even in retrospect." *Urie v. Thompson,* 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949). In that case, plaintiff had contracted silicosis as result of his employment with the railroad. The Court rejected the theory that "each intake of dusty breath is a fresh cause of action" and reasoned the injury was "the product of a period of time rather than a point of time." *Id.* at 170, 69 S.Ct. at 1024.

Under *Urie's* rationale, when an occupational illness is the basis for the claim under FELA, the statute of limitations begins to run when the employee becomes aware of his disease and its cause. *See Young v. Clinchfield R.R. Co.,* 288 F.2d 499 (4th Cir.1961).

The *Urie* reasoning has also been applied in suits under the Federal Tort Claims Act, particularly those where medical malpractice was alleged. Courts of appeals have ruled that a malpractice claim accrues against the government when a claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. *See Quinton v. United States,* 304 F.2d 234 (5th Cir.1962); *Tyminski v. United States,* 481 F.2d 257 (3d Cir.1973). We applied a similar rationale to actions arising under the Longshoremen's and Harbor Workers' Compensation Act. *Sun Shipbuilding & Dry Dock Co. v. Bowman,* 507 F.2d 146 (3d Cir.1975). *See also Fowkes v. Pennsylvania R.R. Co.,* 264 F.2d 397 (3d Cir.1959).

Many courts of appeals, including this one, had held that in some medical malprac-

tice cases a plaintiff must also realize his injury was negligently inflicted before the limitation period begins to run. *See Tyminski v. United States,* 481 F.2d at 263; *DeWitt v. United States,* 593 F.2d 276, 278 (7th Cir.1979); *Casias v. United States,* 532 F.2d 1339 (10th Cir.1976); *Reilly v. United States,* 513 F.2d 147 (8th Cir.1975); *Jordan v. United States,* 503 F.2d 620, 622 (6th Cir.1974); *Portis v. United States,* 483 F.2d 670 (4th Cir.1973); *Toal v. United States,* 438 F.2d 222 (2d Cir.1971); *Hungerford v. United States,* 307 F.2d 99 (9th Cir.1962). The Supreme Court, however, was "unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment." *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979).

The Court in *Kubrick* cautioned that a plaintiff can and must "protect himself by seeking advice in the medical and legal community," *id.* at 123, 100 S.Ct. at 360 and "must determine within the period of limitations whether to sue or not." *Id.* at 124, 100 S.Ct. at 360. The Court acknowledged that were the rule different in the malpractice context, "it would be difficult indeed not to apply the same accrual rule to medical and health claims arising under other statutes and to a whole range of other negligence cases arising under the Act and other federal statutes." *Id.*

In *Dubose v. Kansas City Southern Railway Co.,* 729 F.2d 1026, 1030 (5th Cir. 1984), the court of appeals saw *Urie* and *Kubrick* as representing a continuum. "*Urie* signalled the inception of the discovery rule and *Kubrick* merely restated the rule while defining its outer limits." In *Zeleznik v. United States,* 770 F.2d 20, 23 (3d Cir.1985), we observed that the substance of the *Kubrick* discovery rule is that "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *See also Fletcher v. Union Pacific R.R. Co.,* 621 F.2d 902, 906–07 (8th Cir.1980).[1]

Plaintiff contends *Fowkes v. Pennsylvania R.R. Co.,* 264 F.2d 397 (3d Cir.1959), requires the application of a different rule. In *Fowkes,* the employee developed arthritis from the repeated trauma to his shoulder brought on by the use of an air hammer in his many years of working for the railroad. No single incident could be isolated as the cause of the plaintiff's injury.

There, we concluded that the statute of limitations did not begin to run before "the plaintiff was relieved of jolting work with the heavy hammer." 264 F.2d at 399. Plaintiff here contends that if the same approach were used the statute of limitations would not begin to run until his last day of work in November 1982.

*Fowkes,* however, is clearly distinguishable. There the jury found specifically that the plaintiff was unaware that the physical condition for which he sought damages had existed for more than three years before the suit had been filed. That such knowledge would have created an entirely different situation was recognized by the court's reference to the inapplicability of its holding to instances where a single traumatic incident creates a cause of action.

*Fowkes* can be fairly read as implying that had identification of the injury and its cause occurred before employment terminated, the discovery of injury rather than the cessation of work would have marked the beginning of the limitations period. From that viewpoint, *Fowkes* does not support the plaintiffs contention that the stat-

1. This case does not present a situation where defendant would be estopped from asserting the statute of limitations because of fraud or concealment. *See Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Ciccarelli v. Carey Canadian Mines, LTD.,* 757 F.2d 548 (3d Cir.1985); *Wells v. Rockefeller,* 728 F.2d 209 (3d Cir.1984). Therefore, the general rule of discovery is applicable.

ute of limitations commenced on his last day of work.[2]

Plaintiff also characterizes the defendant's conduct here as a "continuing tort" and asserts that the statute of limitations did not start to run until the wrongful acts ceased. *See Gross v. United States*, 676 F.2d 295 (8th Cir.1982). In other words, he interprets *Fowkes* as holding that the *Urie* test does not apply where employment and exposure to the dangerous condition continue after a claimant becomes aware of his injury and its cause.

We do not accept this construction of *Fowkes* and *Urie*. As noted earlier, in *Fowkes* no event had occurred before cessation of employment that triggered onset of the statutory period. Judge Hastie wrote that the concept of continuing trauma was "rationally restricted, rather than rejected, by those cases which [found] it inapplicable on a showing that one of several similar traumatic incidents has in itself inflicted such serious or evident harm as fairly to be characterized as creating a cause of action and starting the running of the statute of limitations." 264 F.2d at 399.

We understand *Fowkes* to mean that continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy. This interpretation is supported by *Kubrick*, which requires a plaintiff to take prompt action to seek redress.

To further the remedial purposes of FELA, *Urie* granted an extension of time to a claimant who was unaware of his injury. Once discovery occurs, however, it becomes necessary to consider the other side of the coin—the policy against presentation of stale claims. Although the continuing violation concept implies that the liability feature of the claim has not become stale, the same cannot be said of the damages phase. Proof relevant to reduction of damages which a defendant might be able to produce soon after the time the plaintiff discovers his injury may become difficult to obtain because of the passage of time if presentation of the claim is postponed. If the discovery rule is not enforced, damages can continue indefinitely, accumulating at the option of the claimant.

Viewed in this light, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), does not control here. In that case the Fair Housing Act required that actions for statutory violations be brought within six months. The Court, however, permitted claims alleging a practice of discrimination to be filed after that time. In reading that case it is important to bear in mind that the principal relief under that statute, is usually an injunction rather than damages. The Court used careful language in its narrow holding: "where a plaintiff, pursuant to the Fair Housing Act, challenges ... an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *Id.* at 380–81, 102 S.Ct. at 1125.

Neither *Urie* nor *Kubrick* is cited in *Havens Realty* indicating the Court did not intend that case to have broad application. We therefore do not read *Havens Realty* as limiting *Urie* or *Kubrick*.

*Page v. United States*, 729 F.2d 818 (D.C.Cir.1984), on which plaintiff also relies, was an intentional conduct case, and in that respect is distinguishable. To the extent that *Page* might be thought to consider *Fowkes* as limiting *Urie*, we decline to follow it. *See Tyminiski*, 481 F.2d 257 (3d Cir.1973). *Cf. Fletcher v. Union Pacific R.R. Co.*, 621 F.2d at 908.

Plaintiff had knowledge of his injury and its cause more than three years before filing suit. In FELA cases the running of the statute of limitations affects not only

**2.** It is noteworthy that in *Fowkes* the panel's decision resulted in an earlier commencement of the statutory period than that adopted by the trial court, which had used a somewhat expanded *Urie* rationale. Thus, rather than enlarging the *Urie* discovery rule, *Fowkes* narrowed the limitation period but nevertheless found that the claim was not barred.

the remedy but eliminates the cause of action itself, see *Engel v. Davenport*, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926); *Atlantic Coastline R.R. v. Burnette*, 239 U.S. 199, 36 S.Ct. 75, 60 L.Ed. 226 (1915). Therefore, plaintiff here has no claim for physical injuries occurring before August 3, 1980, three years before the date on which he filed suit against the railroad.

■ It does not follow, however, that the statute of limitations has extinguished all claims plaintiff has against defendant. There remains for consideration the period from August 3, 1980 to November 1982 when he retired. During that time he was allegedly exposed to diesel fumes because of the negligence of defendant. The fact that plaintiff was aware of the harmful effects of his exposure to pollutants would go to his contributory negligence under the circumstances but might not bar his claim for aggravation during that period. 45 U.S.C. § 53 (1982); *Meyers v. Union Pacific R.R. Co.*, 738 F.2d 328 (8th Cir.1984).

The cause of action for aggravation which might exist here differs from a claim of negligent assignment, which does not arise until the employer, knowing of an employee's partial disability, nevertheless assigns him to unsuitable work. *See Fletcher v. Union Pacific R.R. Co.*, 621 F.2d 902 (8th Cir.1980); *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112 (5th Cir.1983).

If plaintiff can establish the railroad's negligence, he would be entitled to claim damages for the aggravation of his physical condition that occurred between August 3, 1980 and November 1982. Necessarily excluded will be any aggravation occurring before August 1980, three years before the date suit was filed. To illustrate, if the plaintiff's bronchial condition was aggravated by the defendant's negligence to an extent of sixty percent but only twenty percent had occurred between August 3, 1980 and November 1982, his claim will be limited to the latter amount, subject to further reduction if he is found to have been negligent.

The burden to establish the extent of injury occurring during the relevant period is on plaintiff. We recognize that there may well be practical difficulties of apportioning the injury attributable to the exposure during the allowable period, but we have no indication from the record that the task is insurmountable.

The result we reach is faithful to *Urie* and *Kubrick* and still holds defendant accountable for its negligence during the period of limitations.

Accordingly, the judgment in favor of defendant will be vacated, and the case will be remanded for further proceedings consistent with this opinion.