Eugene G. COURTNEY, Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY and Missouri Pacific Railroad Company, Defendants.

No. LR-C-88-342.

United States District Court,
E.D. Arkansas, W.D.

April 11, 1989.

■■■■■■■■■■

Clark W. Mason, Davidson Law Firm, Little Rock, Ark., for plaintiff.

Kevin A. Crass, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

The Plaintiff brings this lawsuit pursuant to the Federal Employers' Liability Act, (FELA), 45 U.S.C. § 51 *et seq.*, and seeks damages for loss of hearing allegedly due to defendants' negligence. Defendants move for summary judgment contending that plaintiff's claim is time-barred. For the reasons set forth below, the Court will grant defendants' motion in part.

### Background

Mr. Eugene Courtney began working for the railroads in 1952 when he joined the Missouri Pacific as a bridge building helper. In 1956 he went to work for the Rock Island Line Railroad as a fireman, and was eventually promoted to locomotive engineer. He remained an engineer until 1980 when he returned to the Missouri Pacific to work as a fireman, hostler, terminal engineer and hostler helper. He retired in April 1987. In recent years, the Missouri Pacific entered into a joint operating agreement with the Union Pacific Railroad, and while the railroads continue to exist as two separate entities, they are both owned by the Union Pacific Corporation. Because of that relationship, plaintiff sought and defendants consented to an amendment of the original complaint in order to name Missouri Pacific as a defendant. For the purposes of the present motion, however, the issue of timeliness applies to both defendants.

According to his deposition, Mr. Courtney began experiencing a ringing in his ears sometime in 1980 when he returned to work for the Missouri Pacific. On July 2, 1982, after being told by his family that he appeared to have increasing trouble hearing, Mr. Courtney was examined by Dr. John R.E. Dickins of the Ear & Nose–Throat Clinic in Little Rock. Dr. Dickins diagnosed Mr. Courtney as having a hearing loss, and also states that he told Mr. Courtney that his hearing loss was caused by exposure to excessive noise at work. Although plaintiff admits that he was examined by Dr. Dickins in July of 1982, and told he had a hearing loss, he stated during his deposition that he could not remember whether or not the doctor also told him that the hearing loss was work related. (Defendant's Exhibit A p. 20). Mr. Courtney does not deny, however, that he was so informed at that time.

After the examination, Mr. Courtney states he "more or less forgot about it", and continued working for the railroad. *Id.* at p. 21. The plaintiff never filed a grievance or disability claim, nor did he request a different work assignment that would lessen his exposure to noise. In fact, it appears that he did not notify defendants of his hearing loss at all.

In January 1985, Mr. Courtney purchased a hearing aid. But again he filed no claims, nor did he tell defendants of his hearing trouble. Moreover, Mr. Courtney states that he never wore the hearing aid to work out of fear that the device would further damage his hearing if worn in and around locomotives. In short, Mr. Courtney never notified defendants of his injury until after retiring from the Missouri Pacific in April of 1987. On May 12, 1987, plaintiff was examined again by Dr. Dickins who found that Mr. Courtney's hearing loss had worsened. On May 25, 1987, plaintiff filed this lawsuit alleging that the defendants negligently failed to provide a safe work place and exposed him to high levels of noise which caused his hearing loss.

The defendants argue that plaintiff's claim is barred by the FELA three-year statute of limitation since his cause of action accrued on July 2, 1982—the date Mr. Courtney was told by Dr. Dickins that he had a hearing loss resulting from exposure to high levels of noise at work—and was, therefore, stale on July 2, 1985 almost two years before plaintiff commenced this ac-

tion. Plaintiff's primary response is that because Mr. Courtney cannot remember whether or not he was informed of both the nature and cause of his injury in 1982, the question of accrual remains a genuine issue of material fact, which must be resolved in plaintiff's favor thereby precluding the court from finding on the law that the defendants are entitled to summary judgment. In the alternative, plaintiff contends that because his injury was of a continuing nature the FELA statute of limitations was tolled until Mr. Courtney's last day at work.

### Timeliness

■ The FELA statute of limitations provides that that "[n]o action shall be maintained under this [Act] unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Where the injury is the result of some trauma, such as an accident, the effects of the injury are usually immediately apparent. In those cases, the cause of action accrues at the point in time when the injury occurs regardless of whether the plaintiff knows the full extent of the disability. *Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902, 906 (8th Cir.1980). While a defendant may be equitably estopped from raising the statute of limitations defense, there can be no estoppel unless the defendant made misrepresentations that induced the plaintiff to delay taking appropriate legal action. *Id.*, at 906–07. Even if the present case involved some traumatic injury, estoppel would not extend the limitations period because defendants never had notice of plaintiff's injury and thus cannot be charged with causing plaintiff's delay in bringing this lawsuit.

Rather than a traumatic injury, plaintiff's claim rests on being able to show that he has developed an occupational injury, the symptom of which did not become immediately apparent, but instead manifested itself after years of exposure to the various high level noises associated with powerful train engines.

In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the U.S. Supreme Court first articulated what has come to be referred to as the "discovery rule" in cases involving latent injuries such as occupational diseases or injuries. The Court held that a claim arising under FELA did not accrue until the employee is aware, or should be aware of his injury. *Id.*, at 170, 69 S.Ct. at 1025. In that case, plaintiff developed silicosis as a result of his employment with the railroad. The Court found that the cause of action resulting from plaintiff's injury was "the product of a period of time rather than a point in time." *Id.* at 170, 69 S.Ct. at 1025. Consequently, it refused to charge plaintiff with the "unknown and inherently unknowable" and held that his claim did not accrue until the injury manifested itself. *Id.* at 169–70, 69 S.Ct. at 1024–25.

In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a case involving a medical malpractice claim brought under the Federal Torts Claim Act, defendants argued plaintiff's claim was barred under the Act's two-year statute of limitations. 28 U.S.C. § 2401(b). The plaintiff contended, however, that in order for a claim to accrue within the meaning of the Act, a plaintiff must not only know of the existence and cause of his injury, he must also know that the acts inflicting the injury might constitute some legally actionable conduct. *Id.*, at 113, 100 S.Ct. at 355. The Court rejected this last requirement and found that it was not necessary for statute of limitations purposes for a plaintiff to know that a defendant might be legally blameworthy before an action accrues. *Id.*, at 121–22, 100 S.Ct. at 359.

It is interesting to note that although *Kubrick* rejected the notion that a plaintiff must know the legal consequences of an act before the statute of limitations begins to run, the Court never explicitly held that a plaintiff needed to know of the injury's cause for the purpose of determining accrual. *Id.* at 120, 100 S.Ct. at 358. The Court recounted that the lower court "thought that in medical malpractice cases the rule had come to be that the 2–year period did not begin to run until plaintiff has discovered both his injury and it cause." *Id.* The

Court went to say that even if that were the rule, plaintiff's claim in that case would still have been time-barred. *Id.* at 120–21, 100 S.Ct. at 358–59. Yet *Kubrick* left uncertain whether the element of knowledge of causation, as well as knowledge of an injury, was to be added to the *Urie* formula.

In *DuBose v. Kansas City Southern Railway Co.*, 729 F.2d 1026, 1030 (5th Cir.) *cert. denied* 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984), the defendant siezed upon that uncertainty and argued that:

> the *Kubrick* test-no accrual until plaintiff knows the facts of injury and causation-is limited to medical malpractice cases under the FTCA, and that the *Urie* test-no accrual until injurious effects manifest themselves-applies to occupational diseases under the FELA.

*Id.* at 1030.

The Court of Appeals refused to read *Urie* and *Kubrick* as two distinct tests. Rather the court saw these decisions as forming a continuum in the development of the discovery rule with *Urie* signalling the rule's inception and *Kubrick* defining its outer limits. *Id.* Relying on pre-*Kubrick* cases within the Fifth Circuit, the court held that the statute of limitations under FELA does not run against a claimant, who has no reason to know of his injury when it is sustained, "until he 'becomes aware that he has been injured and that his injury is work related.'" *Id. citing Emmons v. Southern Pacific Transportation Co*, 701 F.2d 1112, 1119 (5th Cir.1983).

> While we acknowledge that the *Kubrick* court did not discuss whether a claim accrued when a plaintiff should reasonably have been aware of the critical facts of injury and causation, we think that the *Kubrick* test implicitly contains this formulation.

*Id.* at 1030–31.

A virtually identical reading of *Kubrick* will be found in *Kichline v. Consolidate Rail Corp.*, 800 F.2d 356 (3rd Cir.1986). To date no cases within the Eighth Circuit have ruled on this precise point. However, the standard for dating accrual of claims under FELA articulated in *DuBose* has been adopted by two district courts in cases factually similar to the one at bar. *Stokes v. Union Pacific R.R. Co.*, 687 F.Supp. 552 (D.Wyo.1988); *Jones v. Maine Central R.R. Co.*, 690 F.Supp. 73 (D.Me.1988). In *Stokes*, the district court held that a claim brought under FELA for loss of hearing accrued when the employee became aware not only of his hearing loss but also of its cause. *Id.* at 553–54. Similarly, in *Jones*, twenty-seven plaintiffs sought damages for hearing loss and the defendant moved for summary judgment arguing that the claims of twenty-one plaintiffs were time-barred. Specifically, the defendant argued that a cause of action under FELA accrues when a plaintiff notices the injury, and that *Kubrick*'s language concerning discovery of causation was inapplicable to occupational diseases. *Id.* at 74 n. 1. Relying on *DuBose*, the court rejected defendant's argument and found that "the statute of limitations begins to run when the employee becomes aware not only of his disease but also of its cause." *Id.*

This Court agrees. The underlying purpose of limitations i.e., to avoid the injustice of forcing a party to defend stale claims of which it had no prior notice, would not be served by a rule where causes of action accrue solely upon knowledge of an injury. Moreover, even if *Kubrick* were read so narrowly as to only apply to medical malpractice cases brought under FTCA, the court's unwillingness in *Urie* to bar a plaintiff's claim because of "blameless ignorance" regarding the circumstances of his injury, may also be read to implicitly require a plaintiff to understand or have reason to know of the fact of his injury and its cause. It would be impossible to even choose a defendant, let alone commence an action, without having knowledge of both.

Applying that standard, the plaintiff contends that summary judgment is nonetheless inappropriate in this case because, even though he admits having knowledge of his hearing loss in April of 1982, he should not be charged with knowledge of its causation because he says today that he cannot remember whether he was told by Dr. Dickins that his injury was work relat-

ed. Plaintiff contends that since all inference must be drawn in favor of the opposing party upon a motion for summary judgment, it must be concluded that there exists a genuine issue of fact. The Court disagrees.

While summary judgment was once viewed as an "extreme remedy" to be used sparingly, *Bradsher v. Missouri Pacific R.R.*, 679 F.2d 1253 (8th Cir.1982), a trilogy of Supreme Court cases has clearly undercut if not overturned that view. *Cf. City of Mt. Pleasant, Iowa v. Assoc. Elec. Coop*, 838 F.2d 268, 273–74 (8th Cir.1988).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the Supreme Court said that Rule 56(c) of the Federal Rules of Civil Procedure mandates entry of summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Consequently, the Court held that the burden on a party moving for summary judgment is only to "point[ ] out to the District Court" that there are no genuine issues of material fact. *Id.* 477 U.S. at 325, 106 S.Ct. at 2554.

Once the moving party has met this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986) (citations omitted). "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id., quoting* F.R. Civ.P. 56(e).

In *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) the Supreme Court stated that in the summary judgment stage, the role of the district court is not to weigh the evidence, but rather to determine whether there is any genuine issue for trial. Yet it is clear that such issues are not be raised by mere allegations of the non-moving party. As the Court explained:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

In this case, defendants point to the admission of the plaintiff that he began experiencing some hearing difficulty in 1980 and sought medical help on July 2, 1982 when he visited with Dr. Dickins. Plaintiff further admits he knew of his injury as of that date. Defendants have also shown that Dr. Dickins stated on that date that Mr. Courtney's hearing loss was consistent with noise trauma. Mr. Courtney told Dr. Dickins that he worked for the railroads for a number of years, and Dr. Dickins states he told the plaintiff his injury was probably work related, thus satisfying the element of plaintiff knowledge of the cause of his injury for statute of limitations purposes. Plaintiff's contention that he cannot be charged with such knowledge because he cannot remember the conversation raises no more than the "metaphysical doubt" that the Court in *Matsushita* said would not preclude entry of summary judgment. Therefore, the this Court holds that plaintiff's claim accrued on July 2, 1982 and was time-barred as of July 2, 1985.

### Continuing Tort Doctrine

Plaintiff next argues that even assuming his claim accrued in 1982, the FELA statute of limitations should be tolled until plaintiff's last day of work with Missouri Pacific because his injury was caused by continuous and repeated exposure to noise until his retirement from the railroad. Where an injury is caused by repeated acts, "[t]he statute of limitations may be tolled until the tortious conduct ceases, on the theory that one should not be allowed to acquire a right to continue the tortious conduct." *Fletcher v. Union Pacific R. Co., supra*, 621 F.2d at 908 (citations omitted). Thus, an employee's cause of action against an employer may be tolled "until the last day the employee was subjected to the conditions causing the injury." *Id.*

In *Fowkes v. Pensylvania R.R.*, 264 F.2d 397 (3d Cir.1959), the court of appeals applied the continuous tort theory to a FELA case. There the plaintiff developed joint damage and arthritis due to years of working with an air hammer. The court treated the tort as a continuing wrong which tolled the statute of limitations until the employee ceased working for the railroad. *Id.* at 399. Plaintiff argues this rule should apply here contending it was adopted by *Fletcher.* Plaintiff misreads *Fletcher.* The issues in that case were, first, whether the railroad could be estopped from raising the statute of limitations where physicians, acting as agents of the defendant, misdiagnosed plaintiff's injuries causing him to delay taking legal action. *Id.* at 905–07. The second issue concerned the timeliness of plaintiff's claim for negligent assignment. *Id.* at 907–09. That issue is not present here since unlike *Fletcher*, the defendants in this case were never alerted to plaintiff's injury until after his retirement. Thus, while *Fletcher* implicitly adopted the view that a continuing tort may toll the statute of limitations, the court never reached the question presented here, namely, can the statute be tolled where the employee knows of his injury and its cause and nevertheless still continues to work under the injurious conditions without notifying the employer.

This precise question was addressed in *Kichline v. Consolidated Rail Corp, supra.* In that case, plaintiff filed suit under FELA more than three years after learning that his pulmonary disease had been aggravated by exposure to diesel fumes at the work place. *Id.* 800 F.2d at 357. The plaintiff was diagnosed as having a chronic disease which was aggravated by continuous exposure to harmful fumes emanating from diesel locomotives. As in the present case, the plaintiff never notified defendants of his condition, asked for a change of work detail, or claimed disability. Plaintiff finally retired in 1982 and filed his lawsuit a year later, and more than three years after the first diagnosis. In response to defendant's claim that the action was time-barred, plaintiff argued that under *Fowkes v. Pennsylvania R.R. Co., supra*, the statute of limitations was tolled even though he knew of his injury and its cause until his last day of work. The court rejected this argument, finding that it would require carving out an exception of the test enunciated by the Supreme Court in *Urie. Id.* at 360.

> We understand *Fowkes* to mean that continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy. This interpretation is supported by *Kubrick*, which requires a plaintiff to take prompt action to seek redress.

*Id.*

Here, plaintiff had knowledge of both the fact and cause of his injury more than three years before filing suit. In FELA cases, the running of the limitations period affects not only the remedy but extinguishes the cause of action itself. *See Bell v. Wabash Ry. Co.*, 58 F.2d 569, 571 (8th Cir.1932); *Kichline v. Consolidated Rail Corp., supra*, 361 (and cases cited therein). Therefore, the statute of limitations was never tolled. Plaintiff's claim expired as of July 2, 1982.

### Loose Ends

There remains, however, the question as to whether plaintiff has any remaining claims which may have been timely when this action was commenced. In *Kichline*, the court found that although plaintiff's original claim was time-barred, he could claim damages for aggravation of a partial disability due to the defendant's negligence. *Id.* at 361. The court distinguished aggravation from a claim of negligent assignment in which an employer, knowing of an employee's partial disability, nevertheless assigns him to unsuitable work. *Id. citing Fletcher v. Union Pacific R.R. Co., supra.*

> If the plaintiff can establish the railroad's negligence [in allowing fumes to accumulate in plaintiff's work area], he would be entitled to claim damages for the aggravation of his physical condition that occurred [in a period beginning

three years prior to the commencement of the lawsuit to the date of plaintiff's retirement]. Necessarily excluded will be any aggravation occuring [more than] three years before the date suit was filed.

*Id.*

The source of this cause of action is somewhat unclear. The *Kichline* court relied in part upon *Meyers v. Union Pacific R.R. Co.*, 738 F.2d 328 (8th Cir.1984) and 45 U.S.C. § 53. Both *Meyers* and § 53 merely state that a defendant may raise the defense of contributory negligence on the part of the employee in FELA cases. In *Wehrman v. United States*, 830 F.2d 1480 (8th Cir.1987), the court cited this portion of *Kichline* with approval. *Id.* at 1486 n. 4. However, Wehrman was a medical malpractice case brought under the FTCA, rather than FELA. It should also be noted that unlike the present case, there was evidence that the plaintiff's injury in *Kichline* was a pre-existing injury whose origin was not necessarily the result of the employer's occupation.

Because these issues were not briefed by the parties in the original motion, the Court will withold its decision as to whether plaintiff may maintain such a cause of action for aggravation. The parties should submit their briefs, and any other materials relevant to this question forthwith.

IT IS, THEREFORE, ORDERED that the motion for summary judgment be, and it hereby is, granted in part as set forth in this opinion.

IT IS FURTHER ORDERED that the parties submit briefs on the remaining issue of plaintiff's possible cause of action for aggravation forthwith.