Edward J. **MILLER**, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant.

No. CIV. A. 99–CV–4483.

United States District Court,
E.D. Pennsylvania.

July 28, 2000.

rights. *See* Fed.R.Civ.P. 16(f) & 41(b).

Lawrence A. Katz, Bala Cynwyd, PA, for Plaintiff.

Michael W. Burns, Pittsburgh, PA, for Defendant.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Now before the Court are the motions of the defendant, Consolidated Rail Corporation, to transfer the venue of this action to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) (Document No. 9), and for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (Document No. 10) Upon consideration of defendant's motions in omnibus fashion, the attachments thereto, and plaintiff's responses (Documents No. 11 & 12), both defendant's motions will be denied.

### I. BACKGROUND

Plaintiff Edward J. Miller ("Mr. Miller") is a resident of Indiana and a former employee of the defendant, Consolidated Rail Corporation ("Conrail"). (Compl. at ¶¶ 1, 11). Mr. Miller began his railroad career in 1968, when he obtained employment with Penn Central. (Dep. at 18, lines 2–4). Over the years, he worked in several positions, including brakeman, engineer, and fireman. (Dep. at 18, lines 11 through 23). Presently, Mr. Miller is employed by CSX Corporation. (Dep. at 10, lines 10 & 11).

During his employment with Conrail, Mr. Miller alleges that he was exposed to "extremely loud sounds and noises" that led to a permanent hearing loss. (Compl. at ¶ 11). While he acknowledges having experienced ringing in his ears and temporary periods of reduced hearing throughout his career, Mr. Miller claims that he was not aware of any injury to his hearing until he was examined after an occupational accident that occurred on November 20, 1989. (Dep. at 82, lines 6–8). Mr. Miller alleges that as the cumulative result of these noises and the accident, he sustained "serious, painful, and permanent injuries" that are expected to continue for an "indefinite time in the future." (Compl. at ¶¶ 9, 11). He seeks recovery pursuant to the provisions of the Federal Employer Liability Act, 45 U.S.C. § 51 et seq. ("FELA"), and the Federal Safety Appliances Act, 45 U.S.C. §§ 1–26.

Mr. Miller filed an original action in the Eastern District of Pennsylvania on August 5, 1991 (No. 91–04957), alleging back and hearing injuries. (Def. Motion at n. 2). After settling the back injury portion of the claim, the parties entered into a Stipulation of Dismissal, in which they agreed to dismiss the hearing loss claim without prejudice. Id. In December, 1992, Conrail agreed to toll the statute of limitations with respect to the hearing loss claim as of the date of filing the original Complaint in this manner. Mr. Miller brought this action on September 8, 1999, in the Eastern District of Pennsylvania, alleging that his noise induced occupational and traumatic hearing losses experienced are the result of Conrail's negligence. (Compl. at ¶ 10).

### II. TRANSFER OF VENUE

Even when venue is proper, a court may transfer "... any civil action to any other district or division where it might have been brought," if the transfer provides for "... the convenience of the parties and witnesses, in the interest of justice ...." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing the need for a transfer by demonstrating that (1) the case

could have been brought initially in the proposed transferee forum, (2) the proposed transfer will be for the convenience of the parties (3) the proposed transfer will be in the interests of the convenience of the witnesses, and (4) the proposed transfer will be in the interests of justice. *See Richards v. Consolidated Rail Corp.*, 1994 WL 586009, at *1, No. 94–3942, 1994 U.S. Dist. LEXIS 14985, at *2 (E.D.Pa. Oct. 18, 1994); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

A claim alleging a FELA violation may be brought in the district where the defendant resides, where the events leading to the injury occurred, or any district where the defendant was doing business at the time the injury occurred. *See* 45 U.S.C. § 56. Thus, Mr. Miller might have brought his claim in the Eastern District of Pennsylvania where Conrail is headquartered, the Southern District of Indiana where the alleged injury occurred, or any district in which Conrail conducted business at the time Mr. Miller commenced the action. Conrail seeks to transfer this action to the Southern District of Indiana on the ground of convenience. (Def. Mem. at 3).

■ In applying 28 U.S.C. § 1404(a), courts have consistently evaluated requests for transfer by applying relevant public and private factors to the facts of each case. *See Jumara*, 55 F.3d at 879. The Court of Appeals for the Third Circuit applied the following factors in its analysis:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that make the trial easy, expeditious, or inexpensive; the relative

administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–880. Upon consideration of Conrail's motion and supporting memorandum and Mr. Miller's response and weighing the relevant factors given the facts of this case, I conclude that Conrail has not demonstrated that the combined inconveniences of litigating Mr. Miller's claim in the Eastern District of Pennsylvania are not sufficient to override the forum he has chosen.

**A. Forum Preferences, Convenience of the Parties, Location of Operative Events**

■ In ruling on a defendant's motion to transfer venue "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995) (quoting 1A PT. 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.345[5] at 4360 (2d ed.1995)). While a plaintiff's choice of forum is routinely given less weight if he has no clear connection with it, his choice may be accorded some "judicial respect" if he demonstrates that "... a forum in which he does not reside will be more convenient for him, ... especially in an [sic] FELA action." *Coble v. Consolidated Rail Corp.*, 1992 WL 210325, at *2, No. 92–2386 (E.D.Pa.1992); *see also Richards*, 1994 WL 586009, at *2, 1994 U.S. Dist. LEXIS 14985, at *4–5.

■ Conrail contends that Mr. Miller's choice of forum should be given less deference because he lacks a clear connection to the Eastern District of Pennsylvania, with only his counsel and Conrail's expert witness there. (Def. Mem. at p. 7). While it is true that Mr. Miller does not reside in the Eastern District of Pennsylvania and the operative facts did not occur here, Conrail overlooks the most obvious link between Mr. Miller, his case, and this district: Conrail maintains its business headquarters here. Although he does not reside here, Mr. Miller and his case have more than a superficial link to this forum, and Mr. Miller has provided a

sufficient rationale as to the reason he chose to file his claim here. Conrail's assertion that Mr. Miller bears no significant connection to this forum is not persuasive, and his choice will not be given reduced deference.[1]

To assess the convenience of the chosen forum for each of the parties, the court is guided by their relative physical and financial conditions. *See Jumara*, 55 F.3d at 880. Defendant companies who are in the business of transportation are likely to experience less expense in transporting witnesses from one forum to another. *See Kielczynski v. Consolidated Rail Corp.*, 837 F.Supp. 687, 689 (E.D.Pa.1993); *see also* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 (2d ed.1986). Conrail asserts that the expense related to transporting potential essential witnesses from Indiana to the Eastern District of Pennsylvania will be higher than the expense of holding the trial in the Southern District of Indiana. (Def. Mem. at 6). While this may be true, the nature of Conrail's business makes it likely that it will experience less financial inconvenience in transporting witnesses than other defendants in similar positions. The expense related to the transportation of witnesses does not present an inconvenience to Conrail that is sufficient to disturb Mr. Miller's choice of forum.

### B. Convenience of Witnesses

Conrail contends that the witnesses essential to determining liability all reside within the Southern District of Indiana and would be inconvenienced by travel to the Eastern District of Pennsylvania to testify. (Def. Mem. at 5). While witnesses from Indiana may suffer some inconvenience in traveling to the Eastern District of Pennsylvania to testify, Conrail has provided no evidence demonstrating hardship for any of the named potential witnesses. Furthermore, Mr. Mil-

ler has indicated that there are potential witnesses located in the Eastern District of Pennsylvania who would need to travel to the Southern District of Indiana if venue were transferred. (Plaintiff's Resp. at 3). While I appreciate the potential inconveniences imposed upon the witnesses, I conclude that the evidence as to the convenience of potential witnesses is not sufficient to tilt the balance in favor of transferring the claim to the Southern District of Indiana.

Conrail expresses further concern regarding this Court's lack of authority to compel the presence of potentially essential unwilling witnesses located in Indiana. (Def. Mem. at 8). Again, Conrail has advanced no evidence to support the assertion that any witness would have to be compelled to testify by subpoena. Most "essential liability witnesses" named within its supporting memorandum are Conrail employees, and it is extremely unlikely that they or Mr. Miller will resist or refuse to testify. Further, if any of the named physicians located in Indiana were to resist or refuse to testify or submit an affidavit demonstrating that travel would be an unnecessary hardship, the Court may accommodate those witnesses through modification of the requirements of testimony. *See* FED.R.CIV.P. 45(c)(3)(B)(iii).

### C. Practical and Efficient Administration

Conrail finally contends that the public interest would be best served by a transfer because this case has no connection with the Eastern District of Pennsylvania. (Def. Mem. at 7). Specifically, Conrail states that the Eastern District of Pennsylvania is "composed of communities which bear no relation to the pending litigation" which would serve to "impose the burden of congested dockets and jury duty" on the citizenry. (Def. Mem. at 7). I disagree. Conrail's principal office

---

1. Although some courts have discounted the argument that a FELA claim should allot exceptional weight to the plaintiff's choice of forum if the forum chosen is not his home forum, this is not sufficient reason to discount other connections the plaintiff may have with it. The moving party bears the burden to demonstrate the unequivocal need for a transfer, grounded in the unfair inconvenience it would experience if

forced to litigate in the plaintiff's chosen forum. *See Richards*, 1994 U.S. Dist. LEXIS 14985, at *2, 1994 WL 586009, at *1. Even if Mr. Miller's choice is not afforded exceptional weight, his preference will prevail unless Conrail demonstrates that Mr. Miller's choice presents an unequivocal and unfair disadvantage to itself. *See Hohler v. Pennsylvania Railroad Co.*, 140 F.Supp. 487, 488 (D.Pa.1956).

is located within the Eastern District of Pennsylvania, and I am unconvinced that citizens of this district are completely disinterested in the alleged liability of one of its own corporate citizens.[2]

Thus, I conclude that Conrail's motion to transfer venue will be denied.

## III.  SUMMARY JUDGMENT

A court may grant summary judgment "... if the pleadings, interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]  FED.R.CIV.P. 56(c).  The moving party has the initial burden of demonstrating the absence of a genuine issue concerning any material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Once an absence of a genuine issue of material fact is established, the non-moving party must come forward with enough evidence to support a jury verdict in its favor.  *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).  In assessing the record, all ambiguities and reasonable inferences are viewed in light most favorable to the non-moving party.  *See id.*  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### A.  Discovery Rule and FELA

Under FELA, "no action shall be maintained ... unless commenced within three years from the day the cause of action has accrued."  45 U.S.C. § 56.  A plaintiff who fails to file a claim within three years from the accrual of the cause of action is thereafter barred from recovery.

If an injury is the cumulative result of repeated exposure to harmful elements and develops "over a period of time as opposed to a point in time," the statutory period within which a complaint may be filed does not begin until the actual injury manifests itself to the injured person.  *See Urie v. Thompson*, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (holding that for the purpose of a statutory time limit, an injury is deemed to have occurred when it manifests itself to the injured party, and noting that the legislative policy underlying the development of a limitations period was probably not intended to preclude a plaintiff's ability to pursue a legal remedy due to "... blameless ignorance").  This doctrine, known as the discovery rule, was further developed by the Supreme Court in a case that applied rule to medical malpractice claims under the Federal Tort Claims Act.  *See United States v. Kubrick*, 444 U.S. 111, 124, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).  In *Kubrick*, the Court held that the statutory time frame begins to run once a plaintiff is aware of his injury and its cause, regardless of whether he is aware that legal recourse may be available to him.

The Court of Appeals for the Third Circuit has interpreted the discovery rule to mean that a cause of action begins to accrue when an injured party possesses "sufficient critical facts" that his or her rights have been invaded.  *See In re Central R. Co.*, 950 F.2d 887, 892 (3d Cir.1991) (acknowledging the rule established in *Kichline v. Consolidated*

---

2.  Most of the public factors applied in *Jumara* are neutral in this case.  Mr. Miller's allegation is one of federal law.  Thus, the enforceability of a judgment, public policies of the fora, and the familiarity of the judge with state law would be unaffected by forum choice.  Further, neither party asserts that court congestion in either district presents a barrier that would significantly increase its inconvenience.  Thus, these factors do not weigh strongly in favor of either party.

3.  Citing *Rogers v. Missouri P.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), Mr. Miller contends that because he alleges a violation of FELA, the Court must apply a less strin-

gent standard of review in deciding whether summary judgment is appropriate.  (Plaintiff Resp. at 2).  His reliance on *Rogers* is misplaced.  The Court in *Rogers* held that a jury verdict in favor of the plaintiff in a FELA case should not be set aside if the defendant employer was found to be even slightly negligent.  Here, the Court's role is to determine whether there exists a genuine issue of material fact.  Neither party in this case argues the presence or absence of negligence, and it is not the role of the Court to assess whether either party was negligent.  Thus, *Rogers* does not control in this case.

*Rail Corp.*, 800 F.2d 356 (3d Cir.1986), as the controlling authority in determining accrual of the statute of limitations for FELA claims); *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 359 (3d Cir.1986) (concluding that the statute of limitations began to run not when the plaintiff terminated his employment, but when the plaintiff became aware that he had pulmonary disease and was warned to avoid pollutants found in his work environment); *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir.1985) (applying the discovery rule under the Federal Tort Claims Act to conclude that lack of awareness of a negligent act did not serve to toll the statute of limitations), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986).

■ Thus, an injury does not manifest itself under the discovery rule until the claimant discovers, or reasonably should have discovered, his injury, and knows, or has reason to know, the cause thereof. *See In re Central R. Co.*, 950 F.2d 887, 891 (3d Cir.1991); *Kichline*, 800 F.2d at 359.

### B. Discovery is Disputed

■ Conrail seeks partial summary judgment for the noise-induced occupational hearing loss portion of Mr. Miller's claim. To prevail in this motion, Conrail is burdened with presenting evidence that demonstrates the absence of a genuine issue of a material fact as to whether Mr. Miller knew or should have known of his hearing loss and its cause before August 5, 1988, when the statutory limitation period began to run. *See Bryant*, 923 F.2d at 982. The primary evidence presented by both parties is Mr. Miller's deposition, taken on December 8, 1999. After reviewing the deposition as a whole, I conclude that a reasonable jury could find that Mr. Miller did not possess sufficient facts prior to August 5, 1988, to conclude that the ringing in his ears and episodes of temporary hearing reductions manifested a permanent hearing loss.

Conrail asserts that Mr. Miller's permanent injury manifested itself with temporary episodes of ringing in his ears and reduced hearing and that Mr. Miller's awareness of these symptoms and the alleged cause demonstrates that his cause of action began to accrue far before August 5, 1988. (Def. Mem. at 15). Mr. Miller counters that while he did experience temporarily reduced hearing, he was not aware that he had experienced a permanent loss of hearing until after the 1989 accident. (Plaintiff Resp. at 4).

Mr. Miller's testimony with respect to this issue is contradictory. When questioned about his awareness of a hearing loss prior to the relevant date, Mr. Miller's responses are inconsistent. At several points throughout the deposition, Mr. Miller stated that he had experienced temporary episodes of ear ringing within his first year working on the railroad and that he experienced ringing in his ears after exposure to loud noises throughout his career. (Dep. at 47, lines 6–10; 43, lines 14–18). Later, however, he stated that the temporary losses were "different than what I have now" and denied being aware of any hearing loss prior to the accident in November, 1989. (Dep. at 46, lines 8–10; 80, line 13; 81, line 20 through 82, line 8).

When confronted with his response on a 1987 medical examination form in which he responded affirmatively to a question inquiring whether he currently had difficulty hearing, Mr. Miller explained that he might have been experiencing a temporary reduction in hearing at that point in time. (Dep. at 84, lines 8–13). Further, Mr. Miller stated that his response to the interrogatories filed with respect to his 1991 complaint incorrectly stated that he "had a slight hearing loss prior to the accident." (Dep. at 81, lines 20–21). Finally, when asked to explain why medical examination notes taken just after the 1989 accident indicated that he had some hearing loss "in the past," Mr. Miller responded that he might have misunderstood questions from his physician, causing his answer to be an incorrect representation of his situation. (Dep. at 131, line 14 through 132, line 8).

While Mr. Miller's evidence is not overwhelming, certain statements made throughout his testimony give rise to an inference upon which a reasonable jury could find that he would not have been aware that his hearing loss injury was permanent. It is conceivable that Mr. Miller might have been confused by a seemingly objective question on a medical examination form, as he expressed

he might have been. And where he experienced ringing in his ears and associated that ringing with the loud noises he was exposed to at work, he stated that these episodes were temporary, that "you never noticed it after it was gone," and that these episodes were distinctive from characteristics of his current injury. It is not for the Court to decide at this stage whether Mr. Miller should have intellectually equated periodic ear ringing with permanent hearing damage, or that his temporary episodes of diminished hearing would or would not have been recognized as a permanent injury by a reasonable person.[4]

My conclusion today finds support in precedent. Courts have held that plaintiffs' lack of awareness of a permanent hearing loss or its cause, despite episodes of temporary symptoms, did not conclusively demonstrate that there was no genuine issue of material fact between the parties.[5] *See Harvey v. CSX Transp., Inc.*, 1994 WL 168354, at *2 (4th Cir. May 5, 1994) (noting that plaintiff's response on a medical questionnaire acknowledging a hearing loss might reasonably have been made during a temporary bout of hearing loss, and did not establish knowledge of the injury's permanence); *Bechtholdt v. Union P.R. Co.*, 722 F.Supp. 704, 707 (D.Wyo. 1989) (concluding that medical evidence presented asserting that a gradual hearing loss presenting itself in the form of temporary losses may not be recognized by a layperson as a permanent injury presented a genuine issue of material fact). Thus, a court must base its conclusion as to whether summary judgment should be granted on the presence or absence of a genuine issue of material fact demonstrated by the evidence that is presented. *See Campbell v. Consolidated Rail Corp.*, No. 87–2312, 1988 U.S. Dist. LEXIS 9009, 1988 WL 84877 (E.D.Pa. Aug. 12, 1988) ("*Campbell II*") (denying summary judgment for three of six hearing loss claims presented on the grounds that individual depositions did not establish unquestionable facts); *Campbell v. Consolidated Rail Corp.*, No. 87–2312, 1988 U.S. Dist. LEXIS 6551, 1988 WL 71283 (E.D.Pa. July 1, 1988) ("*Campbell I*") (concluding that contradictory statements made by the plaintiff during his deposition regarding his awareness of the cause of his hearing loss presented a genuine issue of material fact).

Noise-induced hearing loss injuries are known to be insidious and subtle in nature.[6] As a result, allegations of such injuries under FELA are driven by the facts of an individual case and require a court to carefully apply the discovery rule in that context. In light of these facts, and in light of Mr. Miller's deposition testimony, I conclude that there is a genuine issue of material fact, and Conrail's motion for partial summary judgment will be denied.

---

4. Contradictory testimony made by two separate parties has been held to create a genuine issue of material fact. *See Karnes v. Skrutski*, 62 F.3d 485, 499 (3d Cir.1995). Similarly, a single party can avoid summary judgment if an affidavit or testimony contradicts their own prior statement, as long as there a satisfactory explanation accompanies the contradictory statement. *Cf. Bailey v. United Airlines, Inc.*, 101 F.Supp.2d 311, 317 (E.D.Pa.2000).

5. Of the many cases cited in its memorandum, Conrail relies on *Wyatt v. CSX Transportation, Inc.*, No. 1:96–190 Edgar (E.D.Tenn.1996) (unpublished), to argue that an objective application of the discovery rule would favor summary judgment. Although the specific evidence presented in *Wyatt* must be inferred from the opinion attached to Conrail's motion, it appears that the facts of the two cases are distinguishable. While Mr. Wyatt complained of noticeable hearing loss at home and in social situations prior to his diagnosis, there is no evidence that Mr. Miller experienced these types of losses until after the accident occurred in 1989. (Dep. at 96, lines 12–24). In light of the medical evidence regarding gradual hearing degradation presented in *Bechtholdt v. Union P.R. Co.*, 722 F.Supp. 704, 707 (D.Wyo.1989), and drawing all inferences in favor of Mr. Miller, it is possible that Mr. Miller's loss was not experienced in the same capacity as Mr. Wyatt's, and that a reasonable person may find his lack of conscious awareness of his ultimate injury to be conceivable. Further, regardless of any factual similarity between the two cases, *Wyatt* is not binding on this Court.

6. In *Bechtholdt*, the court referred to the affidavit of a physician who stated that noise induced hearing loss "... may be a gradual insidious occupational injury whose symptoms are often no more distinctive ... to a layman than those symptoms caused by ... the aging process itself." *Bechtholdt*, 722 F.Supp. at 707, n. 2. The court also noted, "Because of the insidious nature of the injury, many of these workers may not even recognize the onset of any definite abnormality...." *Id.*

**30**

## IV. CONCLUSION

Conrail has not demonstrated that the degree of inconvenience to the parties and witnesses of litigating Mr. Miller's claim in the Eastern District of Pennsylvania would be so severe as to result in an unfair administration of justice and require a transfer. While the inconvenience imposed upon witnesses and the location of operative events favor transfer, the importance of Mr. Miller's original choice of forum, Conrail's ability to bear the financial burden of transporting and housing witnesses, and the close proximity of corporate books and records at Conrail's headquarters outweigh these factors. Because Conrail has not met its burden of establishing its need for a transfer of venue, its motion will be denied.

Conrail's motion for partial summary judgment will also be denied. To avoid partial summary judgment, Mr. Miller must have demonstrated that there is a genuine issue of material fact with respect to when he became aware of his non-traumatic permanent hearing loss as a result of exposure to noise during his employment at Conrail. He has done so. Although the evidence Mr. Miller presents is not overwhelming, his deposition testimony presents a genuine issue of material fact as to his awareness of a non-traumatic permanent hearing loss. Thus, this Court is precluded from deciding the action as a matter of law at this stage.