**Dale R. KICHLINE**

v.

**CONSOLIDATED RAIL CORPORATION.**

Civ. A. No. 83–3769.

United States District Court, E.D. Pennsylvania.

Oct. 16, 1985.

Barbara J. Rudguist, Minneapolis, Minn., James F. McBride, Philadelphia, Pa., for plaintiff.

Jonathan F. Altman, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This case is a personal injury action brought pursuant to the Federal Employ-ers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA). Plaintiff is a former employee of the Consolidated Rail Corporation (Conrail) who alleges that his chronic obstructive pulmonary disease was caused and/or aggravated by his exposure to diesel fumes and other pollutants to which he was exposed in the course of his employment. Defendant Conrail moved for summary judgment on August 15, 1985, contending that the suit, filed on August 5, 1983, is barred by the FELA statute of limitations.[1] Plaintiff responded by mail on August 29, 1985. The response was received by the Court on September 3, 1985. Under Local R.Civ.P. 20(c), plaintiff's brief in opposition should have been served by August 28, 1985. Upon application by the defendant the motion was treated as uncontested and judgment entered for the defendant because the plaintiff's response had neither been filed with the Court nor received by the defendant by August 30, 1985. Plaintiff, contending that the untimeliness of his brief was due to mistake, inadvertance or excusable neglect, has now filed a motion to vacate the judgment pursuant to Fed.R. Civ.P. 60(b).

Because we conclude that the circumstances surrounding plaintiff's failure to timely respond to the summary judgment motion suggest that it would be unjust to deprive him of a determination of the issue on the merits, we will vacate our previous order granting a default judgment for the defendant and proceed to consider, on the merits, Conrail's motions for summary judgment and plaintiff's response thereto.[2]

---

1. No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued. 45 U.S.C. § 56.

2. A review of the record reveals that defendant contributed to plaintiff's failure to respond within the ten (10) days prescribed by Local Rule 20. We note first that plaintiff's counsel does not practice in the Eastern District of Pennsylvania and so is unfamiliar with our local rules of practice. It is for just that reason that Local Rule 13 requires nonresident attorneys to retain local counsel, which plaintiff's counsel did. Contrary to Local Rule 13, however, defendant

neglected to serve local counsel with the motion for summary judgment.

Moreover, defendant's notice of motion recited that plaintiff had thirteen (13) days to respond, but nowhere indicated that an additional three (3) days for service by mail was included in that time frame, nor did it specify a date by which plaintiff's response was due.

Plaintiff's counsel, unfamiliar with local practice, added another three (3) days pursuant to Fed.R.Civ.P. 6(e) for service by mail. By that calculation, the responsive brief was timely filed. Local counsel was unaware of the motion, and so had no opportunity to clarify de-

To determine when a cause of action accrues under FELA, we look first to two Supreme Court cases. In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) the Court held that in FELA cases a cause of action does not accrue until the plaintiff has reason to know he has been injured. Subsequently, that rule, sometimes called the discovery rule, was also applied to cases arising under the Federal Tort Claims Act, and in that context several circuits had extended the rule to delay the accrual of a potential cause of action until a plaintiff had the opportunity to discover not only the injury, but also its implications, *i.e.*, that it gave rise to a cause of action. *See, Dubose v. Kansas City Southern Railway Co.*, 729 F.2d 1026 (5th Cir.1984) and cases cited therein. Thereafter, the Supreme Court more specifically defined the parameters of the rule previously announced in *Urie*. In *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Court held that a cause of action accrues when the injured party knows of his injury and its cause, not when he first realizes that the acts leading to his injury give rise to legally cognizable rights. Thus, in *Kubrick*, a patient who had been apprised of the possible cause of his hearing loss three years before filing suit suffered dismissal under the FTCA. This result was reached even though he filed within one year after being told that a post-surgical course of treatment at a VA hospital was definitely responsible for his injury and constituted medical malpractice.

Similarly, the Third Circuit Court of Appeals, applying *Kubrick*, recently disallowed a claim under the FTCA because the plaintiffs knew of their injury and its cause more than two years prior to bringing an action. *Zeleznik v. United States*, 770 F.2d 20 (3d Cir.1985). In *Zeleznik*, the claim was time-barred even though filed promptly after the plaintiffs learned that the man who murdered their son was an illegal alien who had tried to surrender to the Immigration and Naturalization Service before the murder. The court held that under *Kubrick* the knowledge of the murder was enough to put plaintiffs on notice of the possible invasion of their legal rights and further that, "The fact that a reasonably diligent investigation would not have discovered the defendant's involvement is no longer relevant for the purposes of accrual of the statute of limitations". *Id.* at 24. *Accord, Davis v. United States*, 642 F.2d 328 (9th Cir.1981).

Plaintiff contends, however, that an occupational disease case under FELA should be treated differently. A cause of action in such a case, he argues, does not accrue until the last tortious act occurs. In this case, plaintiff was employed by Conrail until 1982 and was continuously exposed to the pollutants that allegedly injured him until his final working day. Having brought suit in 1983, his cause of action would be timely regardless of when he may have become aware of his injury and its cause if the legal question as to when a cause of action accrues is to be decided in terms of plaintiff's last working day rather than by reference to the so-called discovery rule set forth in *Urie* and refined in *Kubrick*.[3]

The concept that accrual in an occupational disease case should be delayed until the allegedly tortious conduct ceases is based upon the rationale that when the injury alleged results from the cumulative effects of numerous negligent acts, the tortfeasor should not be permitted to acquire a right to continue in his tortious

fendant's confusing notice by reason of the fact that plaintiff's non-resident counsel did not communicate with local counsel.

Undoubtedly, a more prudent course of action would have been to request a copy of the Local Rules from local counsel rather than relying upon defendant's notice as to time limits. That small lapse, however, does not justify the extreme sanction of a non-merits judgment.

3. Since the *Urie* case, arising under the FELA, was subsequently applied to the FTCA and expanded in that context, it is entirely logical and consistent with all other courts' decisions to apply *Kubrick*, which arose under the FTCA, to FELA cases as well. *DuBose v. Kansas City Southern Railway, supra.*

course of conduct. *Page v. United States*, 729 F.2d 818 (D.C.Cir.1984); *Emmons v. Southern Pacific Transportation Company*, 701 F.2d 1112 (5th Cir.1983); *Gross v. United States*, 676 F.2d 295 (8th Cir.1982); *Fletcher v. Union Pacific Railroad Company*, 621 F.2d 902 (8th Cir.1980). Language used in the cited cases leads plaintiff to contend that, as a general principle, the *Urie* and *Kubrick* cases do not apply in a continuous injury case, particularly one arising out of an occupational disease.

However, the decisions cited do not support so broad a generalization nor do they compel this Court to adopt such an approach despite the reliance of several courts upon *Fowkes v. Pennsylvania Railroad Company*, 264 F.2d 397 (3d Cir.1959) as the source of their accrual rule for continuous injury cases. *Fowkes* was an FELA case, pre-dating *Kubrick*, in which the plaintiff's arthritic condition was found to have been caused by his use of a heavy air hammer during twenty-eight years of his employment with the Pennsylvania Railroad. The Court of Appeals noted that the *Urie* discovery rule delayed the accrual of the claim until the plaintiff knew or should have known of his condition. His exposure to the air hammer ended in September, 1952, when his request for a transfer to other duties was granted and suit was filed in August, 1955. The issue to be decided was whether the plaintiff knew or should have known of his injury more than two years before his transfer because it was then that he first experienced pain in his shoulder. In upholding the jury's determination that the claim was timely, the court, in dicta, discussed approvingly what it termed the Pennsylvania application of the statute of limitations in continuous injury cases:

'If the relation is continuous, as in that of master and servant, and the default is likewise continuous until the cumulative effect produces disability in the form of occupational disease, total or partial, the master's failure to perform his duty, as we said above, is regarded as a single wrong continuing so long as the employment continues. Such wrong must therefore be redressed by action brought within ... [the statutory period] from the time when the employment terminates'. Quoting from *Plazak v. Allegheny Steel Co.*, 324 Pa. 422, 430, 188 A.130, 133–134. (1936).[4]

To the extent that the federal courts retain the purported *Fowkes* standard, there is persuasive authority for its application here. A close reading of the cited cases, however, demonstrates that the broad proposition asserted by plaintiff was not, in fact, the basis for the decisions in those cases.

In *Fowkes*, for example, the question of when the plaintiff knew or should have known of his injury was submitted to the jury and it was their determination that he was unaware of the critical facts of injury and causation until after the tortious conduct ended that really controlled the outcome of the accrual issue. Significantly, in *Page v. United States* and *Fletcher v. Union Pacific Railroad*, the causes of action for the plaintiffs' original injuries were held to be time-barred under *Urie* because the plaintiffs were aware of their respective injuries long before filing suit. Because they were continually subjected to other tortious conduct, however, they were allowed to maintain actions for later injuries or the aggravation thereof.

The plaintiff in *Page* had first filed a claim against the Veteran's Administration in 1972 for treatment received between 1961 and 1972, which was dismissed by the

---

**4.** Although that may have been the law in Pennsylvania in 1936, the Third Circuit no longer considers it the law today. In *Ross v. Johns-Manville Corp., et al.*, 766 F.2d 823 (3d Cir.1985), involving a claim for cancer which resulted from longstanding asbestosis, the court held that under Pennsylvania law, the cancer could not be considered an injury separate from the asbestosis. Moreover, in considering whether the claim was barred, the court held that, "this single cause of action accrued in 1963 when the decedent first discovered his initial asbestosis-related injury". *Id.* at 827, citing *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 507 (1984).

district court as untimely. He later brought suit alleging that the Veterans' Administration had continued to supply him with addictive drugs without proper monitoring until 1980 when he recovered from the resulting addiction. The court held that "regardless of when Page learned that he had reason to sue, the limitations period could not have expired on any malpractice immediately prior to Page's 1981 submission to VA". 729 F.2d at 821. The court then determined, based upon the continuing tort doctrine, that the claim could be maintained for injury incurred during the entire 1972–1980 period in order to "deny VA an open-ended license to continue the drug program that assertedly caused and maintained Page's drug addiction". *Id.* at 823. Although not specifically noted in the court's opinion, it is obvious that the Veterans' Administration was aware that the plaintiff claimed he was being injured by the drug treatment he was receiving in 1972 when the first action was brought, yet it was continued until March, 1980, apparently without modification.

Similarly, in *Fletcher*, the plaintiff was allowed to maintain his claim that the railroad negligently kept him in a position that aggravated his work-related back injury although the claim for the injury itself was barred. There the facts revealed that the railroad knew of the injury at least since 1966 when the plaintiff's back pain was first diagnosed as a disc problem by an orthopedic surgeon with the railroad's health service. Moreover, in 1973, another health service doctor specifically recommended that the plaintiff be given lighter duties because of his disc problem. Nevertheless, the railroad continued to assign plaintiff to heavy labor between bouts of illness during which he could not work at all. Plaintiff brought one action in 1977 seeking compensation for both the original injury and the railroad's negligent work assignments. Because the court concluded that the plaintiff was also on notice at least since 1966 that his continuing back problems were due to the original 1962 injury, the district court's dismissal of his claim for that injury was affirmed. Only the

claim for subsequent aggravation of plaintiff's back injury from the time the railroad knew of it was allowed.

The case of *Gross v. United States, supra,* is somewhat different from the other continuous injury cases considered here in that there was no relationship between plaintiff and defendant comparable to the employer-employee relationship of the FELA cases or the physician-patient relationship of other FTCA cases. In *Gross,* the plaintiff was a farmer who sought to participate in a government-sponsored agricultural program for which he was declared ineligible in some years and for which an initial determination of eligibility was withdrawn in other years. In addition, the government later demanded repayment of those sums granted pursuant to the after-revoked eligibility decisions. Gross's complaint alleged that government officials acted in violation of the regulations governing the program with an intent to cause the plaintiff emotional distress.

Thus, it was in the context of an allegation of an intentional tort that the court found the claim timely despite the government's contention that it was barred by the *Kubrick* rule. It is in such circumstances that the notion of denying a defendant the right to continue in a wrongful course of conduct applies most forcefully so that a cause of action should not be held to accrue until the conduct ceases. In the face of averments of intentional wrongdoing there is no question as to defendant's knowledge of the plaintiff's injury.

On the other hand, in *Emmons v. Southern Pacific, supra,* although the court's language indicates that the continuing tort doctrine would apply in a proper case, it did not save the plaintiff's claim in that case. The trial court's determination that the claim was untimely was affirmed by the Fifth Circuit Court of Appeals "because it was undisputed that Southern Pacific had no knowledge of Emmons' ankle problem until the hearing before its employment committee on August 12, 1977". 701 F.2d at 1120. While plaintiff was kept in a position that aggravated a pre-existing

ankle condition, the railroad's negligence in keeping him there, if any, was not actionable because Southern Pacific was unaware of the damage plaintiff's duties were causing him until Emmons was fired for excessive absenteeism. At that point, Emmons furnished the railroad with a doctor's statement that the injury which caused him to lose so much work time was aggravated by his employment conditions. There was evidence, however, that the plaintiff himself began experiencing problems in 1974, but neither applied for a transfer nor mentioned his condition to anyone in authority for fear of losing his job. Suit was filed under FELA in 1978.

In *DuBose v. Kansas City Southern, supra,* another Fifth Circuit case, the court upheld the determination that the plaintiff's cause of action was not barred where the trial court, pursuant to defendant's request, allowed the statute of limitation question to go to the jury. According to the Court of Appeals, the defendant had mistakenly requested the trial judge to charge that while the plaintiff's cause of action for the original injury was barred, it was for the jury to determine whether a cancer, which later arose from chronic obstructive pulmonary disease, was known to the plaintiff's decedent within the limitations period. The verdict for plaintiff was upheld because the defendant requested an erroneous instruction and failed to correct its own error before the jury retired to deliberate. The court indicated that under the *Urie* and *Kubrick* tests, the real jury question should have been whether plaintiff's decedent was aware that his chronic lung problems were employment-related more than three years before suit was filed. Although it was a death case and one involving an occupational disease, neither the date of death nor the decedent's last working day were thought to be significant for accrual purposes. Thus, the Fifth Circuit, in an FELA case, employed the same analysis as the Third Circuit in *Ross v. Johns-Manville* (See n. 4, *supra*) to determine when an occupational disease claim accrues, *i.e.,* when the plaintiff is or should be aware of his initial injury and its cause.

This is true even if the original problem later causes more serious illness.

From the foregoing discussion of the case law, it should be apparent that the Courts of Appeals have not developed a general continuous tort exception to the *Kubrick* refinement of the *Urie* "discovery" rule. Rather, a plaintiff's cause of action in any FELA case accrues when he is aware of his injury and its cause. If he then brings his injury to the defendant employer's attention but it refuses to correct the employment conditions that caused the plaintiff's problem or a different problem is caused thereby, the plaintiff may acquire a separate FELA cause of action. As to that action, the statute of limitations may be tolled as long as the negligent or intentional conduct persists. The case law makes it quite clear, however, that there can be no continuous injury cause of action in the absence of defendant's knowledge that its conduct caused or contributed to plaintiff's injury. This analysis and conclusion serves two interests. For just as a defendant should not acquire a right to persist in harmful conduct, neither should a plaintiff acquire a right to remain in adverse conditions, unknown to the defendant, and increase his damages thereby.

With these standards in mind, we turn to a consideration of the accrual of plaintiff's cause of action in this case. It is undisputed that plaintiff's chronic lung problem was first diagnosed in 1978. Plaintiff's treating physician, referring to his office records, testified at his deposition that he had made an initial diagnosis of chronic obstructive pulmonary disease and informed plaintiff of it in February, 1978, when Kichline first visited his office. That diagnosis was confirmed by another physician in August, 1978. (Deposition of Mark Koshar, M.D. pp. 12, 13, 15). Under the *Urie* test, it was then that plaintiff knew he was injured.

Next, we refer to the *Kubrick* test for the second critical question: When did plaintiff become aware of the connection between his injury and his employment con-

ditions? Dale Kichline testified at his deposition that Dr. Koshar had first told him to avoid diesel fumes in 1979. That advice was confirmed by a Dr. Wildrick, also in 1979.[5] (Deposition of Dale Kichline at 109, 110).

Therefore under the *Urie* and *Kubrick* "discovery" rules it is clear that plaintiff both knew of his injury and was on notice as to its relationship to his employment conditions no later than 1979. Since his cause of action accrued more than three years before suit was filed in August, 1983, his cause of action is barred by the FELA statute of limitations.

Thus, judgment on the claim for plaintiff's original injury must be granted in favor of the defendant. This conclusion is consistent with the latest application of the *Kubrick* rule in *Zeleznik, supra,* in which the Third Circuit held that a cause of action accrues when plaintiff is aware of his injury and its cause even when he has no reason to know that the cause may constitute a cause of action. Here, although the record indicates that plaintiff's physician did not specifically tell him to quit work until 1982, there is certainly enough uncontradicted evidence to support the conclusion that Kichline was on notice of the possible effect of his working conditions on his illness. He had at least as much notice as the *Zeleznik* plaintiffs, who knew only the identity of their son's murderer within the limitations period and no indication of his prior contacts with the INS.

█ There remains, however, a question whether Conrail was aware of the plaintiff's illness and its relationship to his expo-

sure to diesel fumes on the job. We note that plaintiff did not plead a separate cause of action for negligence in defendant's keeping him in a position that exposed him to aggravating pollutants. However, it is appropriate to consider this issue in light of plaintiff's invocation of the so-called continuous tort doctrine. Plaintiff testified that he did complain about the diesel fumes, particularly in the winter time when he worked in an enclosed area.[6] (Kichline deposition at 103). However, there is absolutely no indication that plaintiff ever told or otherwise advised his supervisors, after consulting Dr. Koshar and Dr. Wildrick, that he had an illness which was being aggravated by his working environment. Likewise, there is no suggestion that he ever requested a different position, or that he requested special equipment to reduce his exposure to pollutants.

Consequently, the Court sees no basis for the application of the continuous tort doctrine to this claim.

In summary, we conclude that the plaintiff knew or should have known of his injury when his illness was first diagnosed. Similarly, it is apparent from the record that he was informed at that time that diesel fumes could contribute to his health problems. Plaintiff continued to work in the same position until 1982 when his health had deteriorated to the point where he could no longer work. Within one year of leaving his employment he brought this FELA action. Because he was aware of his injury and its relationship to his employment more than three years before filing suit, his action is barred by the FELA statute of limitations and judgment must,

---

**5.** Plaintiff's counsel argues that plaintiff was confused about dates and so, presumably, the Court should not hold him to his deposition testimony. However, although Dr. Koshar was not certain of when he first warned plaintiff that diesel fumes were detrimental, he testified that it was his normal practice to give such warnings if the patient's history revealed anything in his life that would tend to aggravate a health problem. (Koshar deposition at 19). That testimony is consistent with plaintiff's recollection of when he first heard of a possible connection between his breathing problems and his job. The chronology is further confirmed

by plaintiff's reference to a warning from Dr. Wildrick. Dr. Koshar's records indicate that Kichline saw Dr. Wildrick a few months after he first visited Dr. Koshar. The only discrepancy is in plaintiff's testimony that these conversations occurred in 1979, while Dr. Koshar's records place them in 1978. For statute of limitations purposes the difference is irrelevant. Both years are beyond the statutory period.

**6.** He first remembers complaining in 1976 or 1977, prior to experiencing the difficulties which led him to consult Dr. Koshar.

therefore, be entered in favor of defendant Conrail. An appropriate order follows.