[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 791 
Gary E. Glass appeals from a summary judgment in favor of Birmingham Southern Railroad Company ("BSRC"). We reverse and remand.
Viewing the facts in the light most favorable to the nonmovant, Glass, as we must in compliance with our standard of review of summary judgments, Hanners v. Balfour Guthrie, Inc.,564 So.2d 412, 413 (Ala. 1990), we find the following facts to be pertinent.
In January 1997, Glass was employed by BSRC as a "carman" whose primary functions were the repair, rerailing, inspection, and occasionally complete rebuilding of rail cars. In the process of rerailing a car with a coworker, Glass injured his back. He experienced pain primarily in his left leg. He was referred to Dr. Stan Faulkner, who performed an MRI, which revealed bulges in some of Glass's lower vertebral disks. Dr. Faulkner also diagnosed Glass with degenerative disk disease. After several months of rehabilitation, Glass experienced no pain or discomfort. In return for a settlement of $9,500, Glass released BSRC from any liability arising "from any and all actions, claims, and demands whatsoever which [Glass] now has or may have, whether known or unknown, developed or undeveloped, on account of or arising out of" the 1997 injury.
In late April or early May 1999, Glass and his coworkers began a new project fabricating racks to transport steel coils by railcar from the steel mill to various destinations. Glass and one coworker were responsible for welding the racks, which weighed approximately 1500 pounds. The process of welding proceeded as follows: A crane would lower the rack onto sawhorse-shaped metal stands. Glass and a coworker would weld as much area as possible on the rack. They would then brace themselves and "teeter" the rack, a process by which they would push the rack until it rolled onto another side, where they would again weld as many places as possible. Glass explained during his deposition the amount of exertion required to overturn the rack:
 "It took everything you had to push this thing over. You couldn't just stand straight up and shove it like this. It doesn't work that way. You had to take a stance and bend over and put everything you had in it to get it to teeter over."
After the second set of welds was made, the rack could not be "teetered" again. Rather, Glass and his coworker would summon the crane to turn the rack for the final welds. *Page 792 
On May 28, 1999, Glass and his coworker finished welding one side of a rack and began to "teeter" the rack. As they began to push, Glass felt a "cramping like feeling in my right buttock area . . . and down into my leg." His toes began to tingle. He left his work area immediately to seek medical assistance. May 28 was the Friday before the Memorial Day weekend, and the company physician, Dr. Cheryl Szabo, had left work early. Consequently, Glass sought treatment in the emergency room of a private hospital, where a doctor told Glass that he had strained his back and suggested that he see Dr. Szabo the following week. When Glass saw Dr. Szabo, she informed him that he had strained his back and that he was suffering from bursitis of the hip. She sent Glass back to work. After a week of continued pain, he again sought treatment from Dr. Szabo; she did not change her diagnosis.
Glass's symptoms did not abate, and he subsequently sought treatment from Dr. Faulkner, the physician who had treated him for his 1997 injury. Dr. Faulkner ordered an MRI, which demonstrated that Glass was suffering from a herniated, or ruptured, disk. Dr. Faulkner performed surgery to correct the problem. Following surgery and recovery, Glass returned to work. He later injured himself again and refused to return to work.[1] At that time, BSRC terminated Glass's employment.
On January 31, 2001, Glass filed this action in the Jefferson Circuit Court. The gravamen of his action is that in failing to provide him a safe workplace BSRC violated the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("the FELA"). In his complaint, Glass alleged that BSRC failed to provide him with adequate assistance and manpower to perform his job, that BSRC failed to provide him with sufficient tools and equipment, and that BSRC failed to provide him with a reasonably safe workplace.
During discovery, Dr. Faulkner stated in his deposition that a herniated disk almost always begins with the degeneration of the disk. Further, he explained that degeneration, bulging, and herniation were progressively worse steps in a continuing process. However, he also stated that he considered Glass's 1999 herniation to be a "new injury." Dr. Faulkner also stated that Glass's act of "teetering" the rack probably caused the injury in 1999.
BSRC filed a motion for a summary judgment, which the trial court granted on July 31, 2003, without specifying a basis. Glass timely appealed.
 Standard of Review
Although the FELA authorizes the filing of a federal action for an employer's alleged failure to provide a safe workplace, and although the substantive law governing such cases is federal,St. Louis Southwestern Ry. v. Dickerson, 470 U.S. 409, 411,105 S.Ct. 1347, 84 L.Ed.2d 303 (1985), "[a]s a general matter, FELA cases adjudicated in a state court are subject to the state's procedural rules." Alabama Great So. R.R. v. Jackson,587 So.2d 959, 962 (Ala. 1991). Thus our standard in Alabama for reviewing a summary judgment applies.
In performing such a review, we use the same standard the trial court used in determining whether to deny or to grant the summary-judgment motion. We must determine whether the evidence presents a genuine issue of material fact and whether BSRC, the movant, was entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. If BSRC makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to Glass *Page 793 
to present substantial evidence creating such a genuine issue of material fact. Bass v. SouthTrust Bank, 538 So.2d 794, 798
(Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida547 So.2d 870, 871 (Ala. 1989). This Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. BalfourGuthrie, Inc., 564 So.2d at 413.
 Analysis
FELA provides, in pertinent part:
 "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its . . . machinery . . . or other equipment."
45 U.S.C. § 51.
The FELA was enacted in 1908 in order to provide railroad employees a remedy for injuries and death resulting from accidents on interstate railroads. Consolidated Rail Corp. v.Gottshall, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d. 427 (1994). Congress enacted the FELA because of its frustration with rail companies' evading liability to their employees for such injuries and death; consequently, the FELA strips such an employer of many of its common-law defenses. Rogers v. MissouriPac. R.R., 352 U.S. 500, 507-08, 77 S.Ct. 443, 1 L.Ed.2d 493
(1957). While the FELA is to be construed liberally, it is not a workers' compensation statute, Gottshall, 512 U.S. at 543,114 S.Ct. 2396, nor does the FELA render an employer an insurer of the safety of its employees. Atlantic Coast Line R.R. v. Dixon,189 F.2d 525, 526 (5th Cir. 1951).
Despite the liberal manner in which the FELA is to be construed, "[t]he basis of the employer's liability is its negligence, not the mere fact that the injury occurred." Dixon,189 F.2d at 527; see also Louisville Nashville R.R. v. Green,255 Ala. 642, 644, 53 So.2d 358, 359 (1951). "Employer negligence remains a prerequisite to liability." Soto v. Southern Pac.Transp. Co., 644 F.2d 1147, 1148 (5th Cir. 1981).
The FELA does not define negligence. Although the FELA "is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has imported into those terms," Urie v. Thompson, 337 U.S. 163, 182, 69 S.Ct. 1018,93 L.Ed. 1282 (1949), we do not look to the common law of our state, or any other state, for guidance as to what constitutes actionable negligence under the FELA. Because the FELA is federal law, "Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817,82 L.Ed. 1188 (1938)] has no application." Urie, 337 U.S. at 174,69 S.Ct. 1018. Rather, "[w]hat constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes."337 U.S. at 174, 69 S.Ct. 1018; see also Rogers, 352 U.S. at 507 n. 13, 77 S.Ct. 443; Yawn v. Southern Ry., 591 F.2d 312, 315 (5th Cir. 1979); Lyles v. Alabama State Docks Terminal Ry.,730 So.2d 123, 124 (Ala. 1998); Jackson, 587 So.2d at 963. In other words, the FELA is one of the rare instances where we must look to "federal common law." *Page 794 
Although our decision is guided by federal common law as pronounced by the federal courts, we do not consider all federal decisions to constitute controlling authority.[2] Rather, in determining federal common law, we defer only to the holdings of the United States Supreme Court and our own interpretations of federal law. Legal principles and holdings from inferior federal courts have no controlling effect here, although they can serve as persuasive authority.
In any negligence case, the plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage. Gottshall,512 U.S. at 538, 114 S.Ct. 2396. In this case, the fact of some damage is undisputed. The parties, however, dispute the existence of the other three elements. To overturn the summary judgment in favor of BSRC entered in response to its properly supported motion, Glass must demonstrate the presence in the record of "substantial evidence" creating a genuine issue of material fact as to the existence of a duty, a breach of that duty, and causation.West, supra. Additionally, because BSRC asserted and supported certain affirmative defenses to Glass's negligence claim, Glass must also present substantial evidence indicating that those affirmative defenses are inapplicable.
 I. Duty
Under the FELA, a railroad employer owes its employees a duty to provide a safe place to work. Blair v. Baltimore OhioR.R., 323 U.S. 600, 601, 65 S.Ct. 545, 89 L.Ed. 490 (1945);Bailey v. Central Vermont Ry., 319 U.S. 350, 352,63 S.Ct. 1062, 87 L.Ed. 1444 (1943); Yawn, 591 F.2d at 315. Additionally, under the FELA, an employer owes its employees a duty to provide adequate help and manpower to enable them to do their job. Blair, 323 U.S. at 601, 65 S.Ct. 545; Yawn,591 F.2d at 315.
Glass asserts that the FELA also imposes upon an employer the duty to provide its employees with sufficient "tools *Page 795 
and equipment." Although the language of the FELA may support this notion,[3] and although some courts may so hold,[4] neither the United States Supreme Court nor this Court has found such a duty. Until and unless we receive clearer guidance from the federal courts, we decline to recognize a duty in the FELA that requires an employer to provide its employees with "sufficient" tools or equipment separate from its duty to provide a safe workplace.
 II. Breach
While the existence and scope of an employer's duty can be determined as a matter of law, the broader question of negligence is generally better left to determination by a jury. Wilkersonv. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413, 93 L.Ed. 497 (1949). Numerous factors must often be accounted for in determining whether a defendant has breached its duty of care to a plaintiff. As the United States Supreme Court has noted in a FELA case,
 "The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue. . . . To withdraw such a question from the jury is to usurp its functions."
Bailey, 319 U.S. at 353-54, 63 S.Ct. 1062. For this reason, only when "one would have to infer from no evidence at all" that the defendant breached its duty can a court take the question from the jury and enter a judgment as a matter of law for the defendant. Moore v. Chesapeake Ohio Ry., 340 U.S. 573, 577,71 S.Ct. 428, 95 L.Ed. 547 (1951).
In this case, we simply cannot find a complete absence of evidence indicating a breach of BSRC's duty. Glass has presented substantial evidence indicating that the rack was so heavy that a crane was necessary for most of its manipulations. He has presented substantial evidence indicating that he and one coworker had to put all of their effort into "teetering" the rack. And he has presented substantial evidence indicating that, although the crane was nearby at all times, he was often unable to use the crane. In fact, Glass testified that BSRC had ordered him and his coworkers to comply with a strict production schedule and that had he or his coworkers used the crane instead of "teetering" the racks they would have fallen behind in production. Glass has thus presented substantial evidence indicating that BSRC's pressuring Glass and other employees to fabricate the racks on schedule constituted a breach of BSRC's duty of care to provide a safe workplace.
Because Glass has presented substantial evidence creating a genuine issue of material fact as to whether BSRC breached its duties, this sort of inquiry is best left to a jury.
 III. Causation
In its motion for a summary judgment, BSRC argued that Glass had failed to present substantial evidence of causation. BSRC offered two reasons for this conclusion. First, BSRC contended that no evidence existed tending to show that Glass's *Page 796 
injury was caused by any negligence on BSRC's part. Second, BSRC argued that Glass's 1999 injury was "caused by and [was] a continuation of" degenerative disk disease, with which Glass had been diagnosed in 1997.
Eschewing a traditional proximate-cause analysis, the FELA embraces an extremely broad standard of causation. The statutorily prescribed inquiry asks whether the employee's injury or death resulted "in whole or in part" from the employer's negligence. 45 U.S.C. § 51. As the United States Supreme Court has explained this concept, a jury question is presented if "employer negligence played any part, even the slightest, in producing the injury or death." Rogers, 352 U.S. at 506,77 S.Ct. 443.
Gallick v. Baltimore Ohio R.R., 372 U.S. 108, 83 S.Ct. 659,9 L.Ed.2d 618 (1963), illustrates this broad standard of causation. In that case a railroad employee working along the railroad's right of way was standing near "a pool of stagnant water, in and about which there were dead and decayed rats and pigeons," as well as insects flying about. The employee was bitten on his left thigh by an insect; the location of the bite later became infected; medical treatment could not cure the infection; and the condition spread throughout his body, eventually necessitating the amputation of both his legs.Gallick, 372 U.S. at 109, 83 S.Ct. 659. The Supreme Court first addressed the issue of a breach of a duty, finding that the Baltimore Ohio Railroad had breached its duty to keep the workplace reasonably safe by allowing the stagnant pool of water to accumulate and to attract pests such as insects. Then moving to causation, the Court held that despite numerous events in the causal chain, the facts supported a finding that the employer's negligence played "`any part at all'" in the employee's injury.Gallick, 372 U.S. at 116-17, 83 S.Ct. 659 (quoting Rogers,352 U.S. at 507, 77 S.Ct. 443).
In this case, it is, of course, debatable whether BSRC's negligence, if any, caused Glass's injury. If BSRC was in fact negligent, reasonable people could disagree about whether its negligence caused Glass's herniated disk. It is also debatable whether Glass's degenerative disk disease was solely responsible for Glass's injury. Even under a narrower traditional proximate-cause analysis, that decision would be a difficult one. Under the broad notion of causation that applies in a FELA action, however, BSRC's negligence, if any, can more fairly be characterized as having caused Glass's 1999 injury.
Under such a broad standard, we hold that Glass has presented substantial evidence indicating that there exists a genuine issue of material fact as to 1) whether BSRC's negligence, if any, played a part (however remote) in causing Glass's injury or 2) whether Glass's injury was instead caused by his degenerative disk disease.
 IV. Affirmative Defenses
Glass also argues that the trial court erred in entering a summary judgment to the extent that it relied upon the existence of one or both of two affirmative defenses asserted by BSRC. In its motion for a summary judgment, BSRC argued that Glass's claims were barred by the release he signed in settlement of his claim based on his 1997 injury. Second, BSRC argued that Glass's claims were barred by the FELA's statute of limitations.
Glass argues that the release he signed in settlement of his 1997 claim is void if its scope should extend to preventing recovery for the 1999 injury. He argues that such a release is prohibited by 45 U.S.C. § 55, which provides that "[a]ny contract . . . the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by [FELA] . . . shall to that extent be void." Further, *Page 797 
he argues that the herniation of his disk was in no way related to his 1997 injury but was instead a new injury. Dr. Faulkner's testimony indicates that the 1999 injury may have been new.
Concerning the statute of limitations, Glass argues that he brought his action within the three-year statutory limitations period by which FELA actions are governed. See 45 U.S.C. § 56.
Whether the trial court properly entered a summary judgment on BSRC's affirmative defenses depends upon our resolution of the prima facie issue of negligence. BSRC argues that the 1997 injury was Glass's only actionable claim; therefore, its affirmative defense presented by the 1997 release depends on whether the 1997 injury caused the 1999 injury. BSRC's statute-of-limitations claim also depends upon a finding that the 1997 injury was the only actionable claim.
Because Glass has presented substantial evidence indicating that a genuine issue of material fact exists as to what caused his 1999 injury, this evidence also creates a genuine issue of material fact as to whether the affirmative defenses asserted by BSRC apply. We need not decide today whether or not they apply, only that a question exists.
 Conclusion
Because Glass has presented substantial evidence indicating that a genuine issue of material fact exists, the trial court erred in entering a summary judgment in favor of BSRC. Therefore, we reverse the summary judgment and remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.
[1] This final injury does not appear to have any bearing on the resolution of this case.
[2] Although the United States Supreme Court has not directly addressed the issue, some members of that Court have suggested that state courts owe allegiance only to the United States Supreme Court and the state's own decisions interpreting federal law. See, e.g., Lockhart v. Fretwell, 506 U.S. 364, 376,113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring) ("The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located."); Steffel v.Thompson, 415 U.S. 452, 483 n. 3, 94 S.Ct. 1209, 39 L.Ed.2d 505
(1974) (Rehnquist, J., concurring) ("However, I do note that the federal decision would not be accorded the stare decisis effect in state court that it would have in a subsequent proceeding within the same federal jurisdiction. Although the state court would not be compelled to follow the federal holding, the opinion might, of course, be viewed as highly persuasive.").
Further, Justice Houston of this Court has suggested that this Court is on at least an equal footing with the United States Court of Appeals for the Eleventh Circuit in determining the proper interpretation of federal substantive law. He has stated that he "do[es] not believe that the Alabama Supreme Court is bound by the decision of any other federal court [besides the United States Supreme Court] on this issue." Hunt v. ChemicalWaste Mgmt., Inc., 584 So.2d 1367, 1391 (1991) (Houston, J., concurring in the judgment) (citing United States ex rel.Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970)). But cf. Handyv. Goodyear Tire Rubber Co., 230 Ala. 211, 211, 160 So. 530,530 (1935) (stating that a decision of the United States Court of Appeals for the Fifth Circuit was "binding on state courts").
[3] The FELA provides that a carrier is liable for any injury resulting from "any defect or insufficiency . . . in . . . machinery . . . or other equipment" provided by the carrier.45 U.S.C. § 51.
[4] Glass cites only three federal decisions that have found the existence of such a duty: Heater v. Chesapeake Ohio Ry.,497 F.2d 1243 (7th Cir. 1974); Southern Ry. v. Welch,247 F.2d 340 (6th Cir. 1957); and Masiglowa v. New York, Chicago St.Louis R.R., 135 F.Supp. 816 (N.D.Ohio 1955). However, onlyHeater actually involves a duty to provide sufficient equipment. 497 F.2d at 1247. Both Welch, 247 F.2d at 341, andMasiglowa, 135 F.Supp. at 816, concern the duty to provide adequate help.