BRYAN, Judge.
The plaintiff Benny W. Dickey appeals a summary judgment in favor of the defen *634 dant Midstream Fuel Service, Inc. (“Midstream”). We affirm in part, reverse in part, and remand.
In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant. See Glass v. Birmingham Southern R.R., 905 So.2d 789, 791 (Ala.2004). Viewed in that manner, the evidence in the case now before us established the following pertinent facts.
Dickey began working for Midstream in September 1997. From September 1997 until June 1998, he worked as a deckhand on the MV Pic. In June 1998, he obtained his tankerman’s license and began working as a tankerman on the MV Pic. In early September 1998, Midstream transferred him to the MV Brooke. Both the MV Pic and the MV Brooke are tugboats that push barges containing petroleum products.
On September 8, 1998, Midstream hired Dr. J. David Eaton, a physician in North-port, Alabama, to perform pulmonary-function tests on Dickey. Those tests revealed that Dickey had severe obstruction of his airways. Dr. Eaton also found that Dickey’s condition prevented him from wearing a protective respirator on a regular basis. Dr. Eaton informed Dickey and Midstream’s safety director of his findings and recommended that Dickey seek treatment from his personal physician in Mobile. Dickey admits that, in September 1998, he knew that he had severe obstructive lung disease.
Midstream’s safety director forwarded the results of Dr. Eaton’s tests on Dickey to Industrial Drug Testing, Inc. (“IDT”), for analysis. Midstream’s safety director asked IDT whether a medical condition prevented Dickey from wearing protective respiratory equipment, and, on September 22, 1998, IDT answered that question in the affirmative. Midstream’s safety department did not inform its operations department, which controlled Dickey’s job assignments for Midstream, of Dr. Eaton’s and IDT’s findings.
Dickey’s personal treating physician, Dr. Charles Yeager, examined Dickey in October 1998. Dr. Yeager diagnosed Dickey’s condition as chronic obstructive pulmonary disease (“COPD”) and informed Dickey of that diagnosis. Dr. Yeager referred Dickey to Dr. Maher N. Sahawneh, a pulmonol-ogist. Dr. Sahawneh examined Dickey in October 1998 and concurred with Dr. Yeager’s diagnosis that Dickey suffered from COPD. Dr. Sahawneh told Dickey that noxious fumes such as paint fumes or petroleum fumes had caused or contributed to his COPD. Dickey admits that, after talking to Dr. Sahawneh in October 1998, he knew that the fumes to which he was exposed while working for Midstream had caused or contributed to his COPD.
While working on the MV Brooke, Dickey began to experience breathing difficulties. In May 2001, Midstream had Dickey’s lungs tested by IDT. IDT reported to Midstream that Dickey’s condition prevented him from wearing protective respiratory equipment. Midstream’s doctor, William C. Hicks, examined Dickey in June, July, and August 2001. Dr. Hicks reported to Midstream that the results of Dickey’s pulmonary-function tests and EKG were abnormal and that Dickey was not qualified to wear a respirator. Midstream also had a stress test performed on Dickey in July 2001 that indicated an abnormality and septal ischemia.
On August 7, 2001, Midstream transferred Dickey from the MV Brooke to the MV Joanne Edwards, where he continued to work as a tankerman. The MV Joanne Edwards is a tugboat that pushes barges containing gasoline and diesel oil.
Midstream ordered Dickey to paint the engine room on the MV Joanne Edwards, *635 which exposed him to paint and diesel fumes in an enclosed ventilated space. In addition, lack of maintenance by Midstream allowed exhaust fumes to leak into the engine room while Dickey was painting it.
Sometime after August 7, 2001, Midstream sent Dickey back to the MV Brooke for a couple of days. He then returned to the MV Joanne Edwards. Dickey worked as a tankerman on the MV Joanne Edwards until October 17, 2008, when he ceased working for Midstream.
On July 8, 2004, Dickey sued Midstream, seeking, pursuant to the Jones Act and general maritime law, to recover for the injuries to his lungs caused by his exposure to noxious fumes while working for Midstream. Answering Dickey’s complaint, Midstream asserted, among other things, the affirmative defense of the statute of limitations. Thereafter, Midstream moved the trial court for a summary judgment on the ground that Dickey’s claims were barred by the applicable three-year statute of limitations.[1] Specifically, Midstream asserted that in 1998 Dickey discovered that his lungs had been injured by his exposure to noxious fumes while working for Midstream; that Dickey’s claims accrued for purposes of the three-year statute of limitations upon his discovery of his injuries and their cause in 1998; and that, therefore, the statute of limitations had expired before he sued Midstream on July 8, 2004.
In response to Midstream’s summary-judgment motion, Dickey conceded that he could not recover for injuries he had sustained more than three years before he filed his action against Midstream on July 8, 2004. However, he argued that, despite his discovery of his initial injury more than three years before he filed his action against Midstream, he was nonetheless entitled to recover for injuries he had suffered within the three years before he filed his action against Midstream under two separate cognizable claims, one based upon Midstream’s alleged negligent aggravation of his injuries during the three-year period before he filed his action against Midstream (“the negligent-aggravation claim”) and the other based upon Midstream’s alleged negligent assignment of him to unsuitable job duties during the three-year period before he sued Midstream that caused him injuries (“the negligent-assignment claim”). With respect to the negligent-assignment claim, Dickey argued that Midstream, with knowledge of Dickey’s COPD and his inability to wear protective respiratory equipment, (1) negligently assigned him to the MV Joanne Edwards as a tankerman on August 7, 2001; negligently ordered him to paint the engine room of the MV Joanne Edwards; and negligently reassigned him to the MV Brooke for a couple of days.
As an alternative to his argument that he was entitled to recover under the negligent-aggravation and negligent-assignment claims, Dickey also argued that he was entitled to recover for injuries he sustained during the three-year period before he filed his action against Midstream by virtue of the “modified continuing tort theory.” The United States Court of Appeals for the Eleventh Circuit explained the modified continuing tort theory in White v.
*636 Mercury Marine, Division of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir.1997):
“[T]he ‘modified’ continuing tort theory ... is best explained in terms of that which it modifies, the ‘pure’ continuing tort theory. Under the pure version of the continuing tort theory, a cause of action for any of the damages a plaintiff has suffered does not ‘accrue’ until the defendant’s tortious conduct ceases. See, e.g., Everhart v. Rich’s Inc., 229 Ga. 798, 194 S.E.2d 425, 428 (1972) (holding that the statute of limitations is tolled until the defendant’s continuing tortious activity is eliminated). Under the pure continuing tort theory, a plaintiff may recover for all the harm he has suffered, not just that suffered during the limitations period. See Taylor v. Meirick, 712 F.2d 1112, 1118 (7th Cir.1983). By contrast, the modified version of that theory allows recovery for only that part of the injury the plaintiff suffered during the limitations period. Here, that would be the damage to [the plaintiffs] hearing caused by the noise exposure occurring within three years before the lawsuit was filed.... ”
Following a hearing, the trial court entered a summary judgment in favor of Midstream. Dickey timely filed a Rule 59(e), Ala. R. Civ. P., postjudgment motion, which the trial court denied, and Dickey then timely appealed to the supreme court. The supreme court subsequently transferred Dickey’s appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Dickey concedes, as he did in the trial court, that his claims for injuries he suffered more than three years before he filed suit on July 8, 2004, are barred by the applicable three-year statute of limitations. Therefore, we affirm the summary judgment in favor of Midstream insofar as Dickey’s claims seek recovery for injuries he suffered more than three years before he filed suit on July 8, 2004.
With respect to injuries he suffered during the three-year period before he filed suit, however, Dickey argues that the trial court erred in granting Midstream’s summary-judgment motion because, he says, he was entitled to recover for those injuries pursuant to (1) his negligent-aggravation claim; (2) his negligent-assignment claim; and (3) the modified continuing tort theory.
Federal law governs our decision in this appeal. In Glass v. Birmingham Southern R.R., 905 So.2d at 794, our supreme court stated:
“Although our decision is guided by federal common law as pronounced by the federal courts, we do not consider all federal decisions to constitute controlling authority. Rather, in determining federal common law, we defer only to the holdings of the United States Supreme Court and our own interpretations of federal law. Legal principles and holdings from inferior federal courts have no controlling effect here, although they can serve as persuasive authority.”
(Footnote omitted.) Those principles govern our determination of federal law in this appeal.
In Chatham v. CSX Transportation, Inc., 613 So.2d 341, 345-46 (Ala.1993), the Alabama Supreme Court recognized the existence of separate, cognizable claims alleging negligent aggravation and negligent assignment under the Federal Employers’ Liability Act (“the FELA”), 45 U.S.C. § 51 et seq. Although the Alabama Supreme Court apparently has not had occasion to consider whether such claims exist under the Jones Act or general maritime law, it stated in Ex parte CSX Transportation, Inc., 735 So.2d 476, 480 n. 2 (Ala.1999), that “[t]he Jones Act, which provides a *637 remedy for injured seamen, ‘adopts “the entire judicially developed doctrine of liability” under the Federal Employers’ Liability Act (FELA).’ ” (Quoting American Dredging Co. v. Miller, 510 U.S. 443, 456, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).) Hence, the Alabama Supreme Court’s recognition of the existence of separate, cognizable claims alleging negligent aggravation and negligent assignment under the FELA indicates that it would likewise recognize their existence under the Jones Act.
In Chatham, the Alabama Supreme Court described the separate, cognizable claims alleging negligent aggravation and negligent assignment under the FELA as follows:
“[Negligent-aggravation and negligent-assignment] claims represent separate FELA causes of action to which the continuous tort doctrine may apply; if it applies, the running of the limitations period is tolled as long as the employer’s negligent conduct continues. Kichline v. Consolidated Rail Corp., 630 F.Supp. 50, 55 (E.D.Pa.1985), affirmed in part, remanded in part, 800 F.2d 356 (3d Cir.1986); Fletcher [v. Union Pac. R.R., 621 F.2d 902], at 907-08 [(8th Cir.1980) ] (negligent assignment).
“... This tolling of the running of the limitations period serves only to protect a claimant’s right to file an FELA claim alleging aggravation or negligent assignment; it is not intended to allow a potential claimant knowingly to accumulate further injury and thereby increase his or her damages, because such a policy would be contrary to the goals of the FELA. See Lloyd v. Missouri Pac. R.R., 832 S.W.2d 310, 313 (Mo.App.1992).
“The vast majority of courts limits recovery to only those damages for injuries (or worsening of existing conditions) that have accrued within the [three-year
limitations period] before the filing of the action....
“Aggravation and negligent assignment are two distinct causes of action containing separate elements of proof; both require a showing of employer negligence, but a claim of negligent assignment requires additional proof that the employer was aware of the employee’s condition. Kichline, supra, 800 F.2d at 361.
“Chatham can claim damages for aggravation of his hearing loss if he can show a deterioration in his hearing caused by his work environment during the three years before he filed this action and can establish the railroad’s negligence in exposing him to injurious working conditions, even if CSX was unaware of his existing hearing impairment. See id. We note that Chatham’s awareness of potential additional work-related hearing loss during that period might not bar his claim for aggravation, but rather would go to the issue of contributory negligence. Id.
[[Image here]]
“... A claim of negligent assignment requires proof that the employer knew of its employee’s injury but nevertheless assigned that employee to unsuitable work, Kichline, supra, 800 F.2d at 361, or failed to provide the employee adequate protection from continuing harm. ‘Whether the assignment was negligent is a question of fact.’ Fletcher, supra, at 909 (citations omitted).
“ ‘[A] plaintiffs cause of action in any FELA case accrues when he is aware of his injury and its cause. If he then brings his injury to the defendant employer’s attention but it refuses to correct the employment conditions that caused the plaintiffs problem or a different problem is caused thereby, the plaintiff may acquire a separate *638 FELA cause of action. As to that action, the statute of limitations may be tolled as long as the negligent or intentional conduct persists. The case law makes it quite clear, however, that there can be no continuous injury cause of action in the absence of the defendant’s knowledge that its conduct caused or contributed to plaintiffs injury. This analysis and conclusion serves two interests. For just as a defendant should not acquire a right to persist in harmful conduct, neither should a plaintiff acquire a right to remain in adverse conditions, unknown to the defendant, and increase his damages thereby.’
“Kichline, supra, 630 F.Supp. at 55.
“Once a plaintiff in a negligent assignment case proves that injury
“ ‘results from a negligent act and the injury continues by reason of continued [employer] negligence, a recovery may be had for damages caused by the continuing negligence although a cause of action based on the original negligent act is barred.’
“Fletcher, supra, at 907-08. The plaintiff must show that the assignment caused his present condition, and causation under the FELA is shown if ‘the railroad’s negligence played any part, however small, in the injury which is the subject of the suit.’ Id. at 909 (citations omitted). The injury may be due to ‘the cumulative effect of a series of incidents.’ Id. Finally, the plaintiff must prove that the repeated assignment was, in fact, negligent; negligence is shown if it is shown that the railroad ‘knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. ’ Id. (citations omitted). Furthermore, ‘[t]he employee’s knowledge of his physical condition does not absolve the railroad of its duty to protect the employee from further injury.’ Id. (citations omitted).”
613 So.2d at 345-47 (footnote omitted; emphasis added).
Based on the holding of the Alabama Supreme Court in Chatham, we conclude that the Alabama Supreme Court would recognize separate, cognizable claims alleging negligent aggravation and negligent assignment under the Jones Act. A claim of negligent aggravation under the Jones Act requires proof that an employee continued to work for his employer until a date that is within the three-year period before the employee filed suit, that an existing injury or condition worsened because of his work environment during that three-year period, and that the employer was negligent in exposing the employee to the working conditions that caused the worsening injury or condition. The employee does not have to prove that the employer was aware of the employee’s existing injury or condition in order to prevail on a claim of negligent aggravation under the Jones Act. Evidence indicating that the employee was aware that exposure to the working conditions could potentially cause the worsening of his existing injury or condition during the three-year period before he filed suit “might not bar his claim for aggravation, but rather would go to the issue of contributory negligence.” Chatham, 613 So.2d at 346. Recovery under a claim of negligent aggravation under the Jones Act is limited to only those damages for the worsening of the employee’s injury that occurred during the three years before the employee filed suit.
“A claim of negligent assignment [under the Jones Act] requires proof that[, within the three-year period before the employee filed suit,] the employer knew of its employee’s injury but nevertheless assigned that employee to unsuitable work, Kichline, supra, 800 F.2d at 361, or failed *639 to provide the employee adequate protection from continuing harm,” Chatham, 613 So.2d at 346, and that the employer’s negligence caused the employee’s injury to continue or worsen. Recovery under a claim of negligent assignment under the Jones Act is limited to only those damages attributable to an injury continuing or worsening during the three-year period before the employee filed suit. “ ‘[T]he employee’s knowledge of his physical condition does not absolve the [employer] of [liability under a claim of negligent assignment].’ ” Chatham, 613 So.2d at 347.
Accordingly, insofar as Dickey asserts claims alleging negligent aggravation and negligent assignment, the trial court erred in entering a summary judgment in favor of Midstream on the basis of the applicable three-year statute of limitations.
In response to Dickey’s argument that he had a separate, cognizable claim of negligent aggravation, Midstream argued to the trial court that, even if Dickey had such a claim, Midstream was nonetheless entitled to a summary judgment with respect to that claim because, Midstream said, Dickey’s evidence did not establish that Midstream knew that its conduct caused or contributed to Dickey’s injury. However, the supreme court held in Chat-ham that an employer could be liable for negligent aggravation even if the employer was not aware that its conduct was causing or contributing to the employee’s injury. Moreover, Dickey presented substantial evidence tending to prove that Midstream did know that its conduct was causing or contributing to Dickey’s COPD.
In response to Dickey’s argument that he had a separate, cognizable claim of negligent assignment, Midstream argued to the trial court that, even if Dickey had such a claim, Midstream was nonetheless entitled to a summary judgment with respect to that claim because, Midstream said, Dickey had not presented any evidence indicating that he personally had told Midstream that he suffered from COPD. As authority for this argument, Midstream cited to the trial court the Chatham court’s quotation from Kichline v. Consolidated Rail Corp., 630 F.Supp. 50, 55 (E.D.Pa.1985), in which the United States District Court for the Eastern District of Pennsylvania had stated that “[i]f [the employee] ... brings his injury to the employer’s attention but it refuses to correct the employment conditions that caused the [employee’s] problem or a different problem is caused thereby, the [employee] may acquire a separate FELA cause of action.” We do not read the Chatham court’s quoting the district court’s opinion in Kichline as being tantamount to the Chatham court’s holding that the employee must prove that he personally brought his injury to the employer’s attention in order to establish a claim of negligent assignment — -rather, we read the Chatham court’s statement that “[a] claim of negligent assignment requires proof that the employer knew of its employee’s injury but nevertheless assigned that employee to unsuitable work, Kichline, supra, 800 F.2d at 361, or failed to provide the employee adequate protection from continuing harm,” 613 So.2d at 346 (emphasis added), as indicating that proof that the employer knew of the employee’s injury, regardless of the source of the employer’s knowledge, is sufficient. In the case now before us, the evidence proved that Midstream was well aware of Dickey’s COPD before it (1) assigned him to the MV Joanne Edwards as a tankerman on August 7, 2001; (2) ordered him to paint the engine room of the MV Joanne Edwards; and (3) reassigned him to the MV Brooke for a couple of days.
Therefore, insofar as Dickey alleges claims of negligent aggravation and negli *640 gent assignment, we reverse the summary judgment in favor of Midstream and remand the case to the trial court for further proceedings consistent with this opinion.
The courts have rejected the modified continuing tort doctrine as a basis for recovery under the Jones Act and general maritime law. See White v. Mercury Marine, Division of Brunswick, Inc., supra. Therefore, insofar as Dickey asserts claims for recovery based upon the modified continuing tort doctrine, we affirm the summary judgment in favor of Midstream.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, with writing, which THOMAS, J., joins.

. The parties agree that the three-year general-maritime-law statute of limitations codified in 46 U.S.C.App. § 763a ("section 763a") applies to all of Dickey’s claims. Section 763 a states:
"Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued."